**GREENWOOD MILLS, INCORPORATED,**
Plaintiff–Appellee,

v.

**RUSSELL CORPORATION,**
Defendant–Appellant.

No. 92–1198.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 29, 1992.

Decided Dec. 2, 1992.

As Amended Jan. 6, 1993.

Harold Simmons Tate, Jr., Manton McCutchen Grier, Sinkler & Boyd, P.A., Columbia, S.C., argued (Clarke W. DuBose, Sinkler & Boyd, P.A., on the brief), for defendant-appellant.

Harold Weinberg Jacobs, Nexsen, Pruet, Jacobs & Pollard, Columbia, S.C., argued (Susan P. McWilliams, Russell T. Burke, Nexsen, Pruet, Jacobs & Pollard, on the brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, WILKINSON, Circuit Judge, and BUTZNER, Senior Circuit Judge.

## OPINION

WILKINSON, Circuit Judge:

This diversity case arises from an aborted transaction for the sale of a textile plant. Russell Corporation put down a deposit on the plant and now wants its money back. Russell claims that the plant's owner, Greenwood Mills, negligently failed to disclose the plant's environmental problems. Greenwood, counting on the sale going ahead, auctioned the equipment in its

plant at a loss. Greenwood claims that Russell negligently failed to disclose that it did not plan to buy the plant.

A jury found for Greenwood on both counts and the district court denied Russell's post-trial motions. Because we believe that the relationship between these parties should be governed by the law of contract rather than the law of negligence, we affirm the district court on the non-refundability of the deposit paid by Russell, but we reverse as to Greenwood's losses for the sale of the equipment. Simply put, Greenwood had no contractual commitment from Russell to buy the plant and proceeded at its own risk in auctioning its equipment.

## I.

In September, 1988, Greenwood Mills decided to sell its Liner Plant, a textile plant in Orangeburg County, South Carolina. The Liner Plant had a long history of environmental problems: wastewater treatment violations that led to a consent order with the South Carolina Department of Health and Environmental Control ("DHEC"); groundwater contamination; and an old landfill that was a possible Superfund cleanup site.

Russell Corporation, a textile manufacturer in Alabama, needed more production capacity. Russell's representatives contacted Charlie Nichols, Greenwood's sales agent, in August, 1989 about making a site visit. Prior to that visit, Dr. Larry Tuggle, Russell's Director of Environmental Affairs, contacted the DHEC to inquire about the Liner Plant. He was told that Greenwood had some violations in the past, but that the wastewater treatment facilities then met DHEC standards and that Greenwood was operating the plant within the parameters of the consent order. On September 6, Russell personnel were shown the plant site and the wastewater treatment facility. Tuggle made a follow-up visit on September 11, touring the plant and the wastewater treatment facility. The evidence is in dispute as to what representations Greenwood employees made to Russell about environmental conditions at the plant both before and during these visits.

On September 12, Gerald McGill, Russell's vice-president, called Nichols and told him that Russell was interested in the Liner Plant. Nichols had previously informed McGill that Sara Lee, a major competitor of Russell, was also quite interested in purchasing the plant for its Hanes subsidiary. Russell agreed to make a ten percent deposit to put a "hold" on the property, wiring the money that same day. Nichols then informed Sara Lee that the plant had been taken off the market. A vice-president at Greenwood wrote McGill on September 18 acknowledging receipt of Russell's deposit; that letter described the deposit as "non-refundable." The letter included a list of nine items that Russell might wish to investigate and invited Russell to "'kick the tires' yourselves." A draft purchase agreement, which did not include environmental warranties, was enclosed with the letter. Russell did not sign the draft agreement, but instead hired Aquaterra, Inc. to do a full environmental audit of the plant.

Russell shortly thereafter informed Nichols that it would want the plant by February 1, 1990. To free the plant for Russell's use, Greenwood decided to hold an auction to sell its remaining equipment. Given the February 1 deadline, Greenwood claims that it did not have time to sell the equipment on an individual basis and that the equipment could not feasibly be moved to another location before sale. The equipment was auctioned on December 6, 1989, allegedly for $1,500,000 less than Greenwood could have obtained through individual transactions.

In the time leading up to the auction, Russell's environmental audit was proceeding. Tuggle again visited the plant the week of October 23 and reviewed certain environmental documents. In addition, he filed a Freedom of Information Act request with the DHEC, giving him access to Greenwood's file. One of the documents that Tuggle copied from that file was the "Ayers Updated Preliminary Assessment" on the Liner Plant. That report gave a

more extensive history of the environmental problems at the plant; Tuggle learned for the first time that there was possible groundwater contamination. Tuggle shared this report with McGill, who faxed it to Nichols on November 2. McGill told Nichols that Russell Corporation would probably want its deposit back. Nichols asked McGill to hold off on a decision on purchasing the plant until Russell received the results of the environmental audit from Aquaterra. Nichols reported this conversation to Greenwood management that same day.

On November 14 Tuggle met with Russell's executive committee to discuss the Ayers Preliminary Assessment. The members of the committee were very concerned by the report ("[W]e had gotten cold feet over it"), but they decided to wait until they received the final Aquaterra report before making a decision. A Greenwood executive called McGill twice in this period to check on the status of the Aquaterra report and to assure McGill that the environmental concerns were open to negotiation.

Aquaterra submitted its report to Russell on December 14, over a week after Greenwood's auction. That report indicated that the level of groundwater contamination exceeded acceptable standards by a substantial amount and that the cost of cleanup at these levels of contamination could not be accurately predicted. In addition, there were other problems relating to the landfills at the plant site. After receiving this report, Russell informed Greenwood by letter that it would not proceed with the transaction.

After Russell decided not to purchase the plant, Greenwood filed this lawsuit to establish its right to retain the $600,000 deposit paid by Russell. Greenwood also claimed that Russell had been negligent in failing to inform Greenwood that it did not plan to go forward with the purchase, causing Greenwood to sustain substantial losses when it auctioned off the equipment in the plant. After trial, the jury returned a verdict for Greenwood on both the $600,000 deposit and the $1.5 million Greenwood

claimed for its losses from the auction. The jury also returned a verdict for Greenwood on Russell's counterclaims of fraud and negligent misrepresentation for Greenwood's failure to disclose environmental problems and for rescission of any contract based on mutual mistake. The district court rejected Russell's motions for jnov or a new trial, and Russell now appeals. We address in turn the questions of the refundability of Russell's deposit and Greenwood's losses from the auction.

## II.

■ Appellant Russell Corporation contends that the district court erred in denying its motions for jnov or a new trial on the issue of the refundability of its deposit. Russell argues that Greenwood either fraudulently or negligently failed to disclose the environmental problems at the plant. According to Russell, Greenwood's failure to disclose entitles it to the return of the $600,000.

We disagree. Russell got exactly what it bargained for here: an option contract. Russell knew that Sara Lee was interested in the Greenwood plant, and that it needed to put money down to lock out its competitor. The option contract took the plant off the market, while limiting Russell's commitment with regard to any purchase. Placing the deposit allowed Russell to conduct a thorough environmental investigation and avoid the losses it might well have sustained if it had prematurely entered into a purchase agreement.

■ Russell attempts to escape this conclusion by arguing that Greenwood had a duty to disclose the environmental problems at the plant. South Carolina law does not support this proposition. A seller does have a duty to disclose "an artificially created, and concealed, unstable condition." *Lawson v. Citizens & Southern Nat'l Bank*, 255 S.C. 517, 180 S.E.2d 206, 208 (1971) (fraud); *see also Pruitt v. Morrow*, 288 S.C. 298, 342 S.E.2d 400, 401 (1986) (negligent misrepresentation). This duty has its limits, however—the seller must know that the material facts are beyond "the reach of the diligent attention, obser-

vation and judgment of the purchaser." *Lawson v. Citizens & Southern Nat'l Bank*, 259 S.C. 477, 193 S.E.2d 124, 128 (1972).

The question, then, is whether a reasonable investigation by Russell would have uncovered the environmental problems at the Liner Plant. Russell could not have been surprised to learn that textile production involves substances which can lead to environmental hazards if not handled properly. As a textile manufacturer itself, Russell was aware that such hazards would not be discernible through mere visual inspection; presumably that is why its environmental director, Tuggle, consulted with the DHEC. The evidence is uncontroverted that the full extent of the problems could have been gleaned from the files of Greenwood and the DHEC.

Russell was entitled to rely on affirmative representations by Greenwood without checking the public records, *Reid v. Harbison Dev. Corp.*, 285 S.C. 557, 330 S.E.2d 532, 534 (Ct.App.1985), *affirmed in part and remanded on other grounds*, 289 S.C. 319, 345 S.E.2d 492 (1986), but Greenwood disputed the evidence of affirmative misrepresentations at trial. That question of credibility was appropriately left for the jury to decide, as were the questions of concealment of the environmental problems and the reasonableness of Russell's investigation. The jury concluded that Greenwood had not misled Russell, and that the facts on the environmental problems at the plant were reasonably available to Russell. We will not disturb that jury determination.*

### III.

■ We do think, however, that the district court erred in not awarding judgment to Russell on Greenwood's claim for compensation for its losses in the plant equipment auction. Greenwood contends that in order to free the plant for Russell's use on February 1, it was forced to auction equipment at sharply reduced prices. Greenwood claims further that Russell was negligent in failing to disclose its alleged decision in early November not to go ahead with the purchase of the plant. According to Greenwood, Russell decided not to proceed long before the receipt of the Aquaterra report. The district court held that there was sufficient evidence in the record from which the jury could have concluded that Russell had decided not to buy the plant before Greenwood proceeded with the auction.

The record contains scant evidence that Russell had reached a final decision any time before the board received the Aquaterra report, the week after the auction was held. The precise timing of Russell's decision is, however, beside the point. Greenwood's claim as to Russell's negligent misrepresentation on the purchase decision fatally conflicts with its claim that Russell's deposit was a non-refundable option contract. In allowing recovery on a theory of negligent misrepresentation, the district court transposed the law of tort with that of contract. The law of contract permits parties bargaining at arms' length to protect themselves by allocating risks to the party best able to bear them. Under the typical option contract, a seller such as Greenwood inevitably bears the risk that a buyer such as Russell will decide against completing the transaction. This risk is reflected in the price that Russell paid for the option. If Greenwood wanted Russell to assume liability for the consequential damages represented by the auction losses, it should have required Russell to sign a purchase agreement before proceeding with the auction. Greenwood's failure to secure a purchase agreement before auctioning its equipment is especially glaring given Russell's disclosure of its environmental concerns long before the auction took place.

Russell was understandably reluctant to face the potentially substantial liabilities that a purchase agreement would have entailed, given its uncertainty about environmental problems on the property. The law

---

* Russell also contends that it is entitled to a new trial because of errors in the district court's evidentiary rulings and charge to the jury. We think that the district court was within its discretion on both counts in declining to grant a new trial.

of contract protects the decision *not* to be bound, as well as the decision to be bound. Business parties need to know when they have entered into a contractual relationship and what the boundaries of that contract are. Allowing the law of tort to inject unpredictability at the edges of contract will lead parties to avoid otherwise productive conduct for fear that a court will later hold them liable for negligence.

■ In this case, the merger of tort and contract concepts was especially unfortunate, because future business plans are presumptively subject to change—unless, of course, they take the form of contractual commitments. Russell's representations were hardly that. Russell's statement that it wanted the plant by February 1 was a mere statement of future intention, insufficient to support a claim for negligent misrepresentation, absent evidence that the statement was false when made. *See Winburn v. Insurance Co. of N. Am.*, 287 S.C. 435, 339 S.E.2d 142, 147 (Ct.App.1985). In order to recover on a claim of negligent misrepresentation, Greenwood was required to show that its reliance on Russell's intentions was "justifiable under the circumstances." *Gruber v. Santee Frozen Foods, Inc.*, — S.C. —, 419 S.E.2d 795, 799 (Ct.App.1992). Without a purchase agreement, Greenwood's reliance was plainly unjustifiable. Greenwood's claim that it relied on Russell going forward with the purchase is further undercut by Russell's disclosure on November 2 of its environmental concerns. Greenwood's own agent, Nichols, asked McGill on that day not to decide on the purchase until Russell received the Aquaterra report. Given this request, Greenwood cannot credibly claim that it relied upon Russell to go ahead with the purchase before that report came in. It is not too much to ask that a business entity such as Greenwood protect its interest through a purchase contract before proceeding with the auction. Accordingly, we hold that Greenwood was not entitled to rely on Russell's representations in auctioning the plant equipment. *Cf. Florentine Corp. v. PEDA I, Inc.*, 287 S.C. 382, 339 S.E.2d 112, 114 (1985) (lessor not entitled to rely on pre-contractual promises not em-

bodied in the contract). Russell was entitled to judgment on this count as a matter of law.

### IV.

For the above reasons, the judgment of the district court is

AFFIRMED IN PART AND REVERSED IN PART.