[690 NYS2d 17]

First Bank of the Americas, Appellant-Respondent, v Motor Car Funding, Inc., et al., Respondents-Appellants.

First Department, May 11, 1999

## APPEARANCES OF COUNSEL

*P. Bradley O'Neill* of counsel (*Lorna G. Schofield* on the brief; *Debevoise & Plimpton,* attorneys), for appellant-respondent.

*Robert M. Calica* of counsel (*Bellavia & Kassel, P. C.,* attorneys), for respondents-appellants.

## OPINION OF THE COURT

ROSENBERGER, J. P.

Plaintiff First Bank of the Americas (First Bank) and defendant Motor Car Funding, Inc. (MCF) entered into a sale and purchase agreement (the Agreement) dated August 19, 1994, which established the terms under which MCF would sell used car loans to First Bank. The Agreement provided that MCF would periodically offer First Bank the option to purchase various loans. The Agreement contained warranties to the effect that the loans would comply with certain underwriting guidelines. First Bank could refuse to purchase any loans that did not satisfy these criteria. Defendant Nicholas Pirrera is the sole owner and chief executive of MCF.

In the course of offering the loans to First Bank, MCF made representations about the quality of the collateral, the individual borrowers' credit history and the amount of the borrowers' down payments. First Bank now claims that many of these representations were false and that MCF thereby induced it to buy less valuable loans, which First Bank would have rejected if it had known the truth.

First Bank also contends that the Agreement required MCF to provide it with original title and lien documents naming First Bank as the lienholder on the cars that secured the purchased loans and that MCF breached the Agreement by failing to produce these documents (the Title Documents) for 115 of the several hundred loans it sold. In opposition, defendants claim that the parties' established practice during the two years of dealing under the Agreement was for MCF to provide only assignments of MCF's lien in favor of First Bank.

First Bank's original complaint against defendants, dated February 4, 1997, contained two causes of action, seeking $1.5 million in damages. The first cause of action charged MCF with breaching the contract by failing to provide the aforemen-

tioned 115 Title Documents. The second cause of action sought to hold Pirrera individually liable for inducing MCF to breach the Agreement. At the same time, First Bank obtained an order to show cause, dated February 5, 1997, seeking replevin of the Title Documents under CPLR 7101. A hearing was held on February 10, at which MCF was ordered to turn over the Title Documents by the following day. MCF was able to produce some but not all of these documents. The court set a new compliance deadline of March 3, 1997, which was later adjourned to April 10, 1997. MCF argued in vain that many of the documents they were accused of withholding did not yet exist: since First Bank had allegedly been willing to accept mere assignments up to this point, new title documents naming First Bank rather than MCF as lienholder had never been created for the loans in question. The record reflects that MCF made extensive efforts to contact the relevant Departments of Motor Vehicles and the automobile dealerships from which MCF had bought the loans, and then to induce these third parties to execute new documents reflecting First Bank's liens. Although the majority of its efforts were successful, MCF was not able to produce all of the requested documents by April 10. The court ruled that "discovery" had to be completed by June 17, although plaintiff had not yet served any discovery requests.

Meanwhile, on April 10, plaintiff had served an amended complaint, adding four new causes of action and seeking $8 million in damages. The six causes of action were as follows: (1) breach of contract by MCF for failure to deliver the Title Documents; (2) breach for refusal to buy back from First Bank the contracts of car buyers who never made the original loan payment; (3) fraud in the packaging of the loans; (4) deceptive practices under General Business Law § 349;* (5) breach for failure to return rebates on insurance premiums for policies that had been canceled; and (6) breach for transfer of the loans to other parties. Plaintiff sought to hold Pirrera liable for these breaches as well, under an alter ego theory. Plaintiff's discovery requests, seeking the Title Documents as well as other materials, were not served until May 5, 1997. Defendants claim that they responded to the majority of the requests, while plaintiff argues that the responses were materially deficient. Defendants served their own requests on June 17.

On June 17, another conference was held before the court and the matter was adjourned to June 30 and then adjourned

---

* Plaintiff does not appeal the dismissal of this cause of action.

again to July 15. The court advised that defendants were in danger of having their answer stricken if they did not comply with the discovery demands. This severe sanction was not suggested by plaintiff; the court proposed it *sua sponte*. Defendants' counsel attempted to raise the issue of their own pending document request and deposition notice, but the court said there would be no depositions nor any order that plaintiff comply until defendants produced all the documents. On July 15, the court struck defendants' answer, notwithstanding defendants' production of 104 out of 115 Title Documents and the fact that discovery was incomplete on both sides after less than 60 days from the serving of discovery demands. The court cut off defense counsel's attempt to discuss these objections.

The issue of damages was referred to a Referee, who recommended $2.6 million. The court directed an inquest to be held on October 9, 1997. On October 6, Pirrera moved for summary judgment, arguing that First Bank had failed to offer any evidence that justified piercing the corporate veil. The following day, both defendants moved for renewal and reargument. In its oral decision on March 3, 1998, the court denied the motion for renewal, on the grounds that it was not based on newly discovered evidence and that the proper procedure would have been a motion to vacate the finding that the defendants were in default with respect to discovery. The court also reiterated its prior conclusion that striking the answer was an appropriate sanction for defendants' discovery noncompliance under CPLR 3126. As a result of the failure to produce documents, moreover, questions of fact existed as to whether the corporate veil should be pierced, necessitating the denial of Pirrera's motion. Finally, the court dismissed plaintiff's third and fourth causes of action. As regards the fraud cause of action, the court considered it duplicative of the breach of contract claims.

█ It was error to dismiss the third cause of action for fraud. A fraud claim should be dismissed as redundant when it merely restates a breach of contract claim, i.e., when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract (*Gordon v Dino De Laurentiis Corp.*, 141 AD2d 435, 436). By contrast, a cause of action for fraud may be maintained where a plaintiff pleads a breach of duty separate from, or in addition to, a breach of the contract (*Non-Linear Trading Co. v Braddis Assocs.*, 243 AD2d 107, 118). For example, if a plaintiff alleges that it was induced to enter into a transaction because a defendant misrepresented material facts, the plaintiff has stated a claim for fraud even

though the same circumstances also give rise to the plaintiff's breach of contract claim (*RKB Enters. v Ernst & Young*, 182 AD2d 971, 972-973). Unlike a misrepresentation of future intent to perform, a misrepresentation of present facts is collateral to the contract (though it may have induced the plaintiff to sign the contract) and therefore involves a separate breach of duty (*Deerfield Communications Corp. v Chesebrough-Ponds, Inc.*, 68 NY2d 954, 956).

Here, plaintiff's fraud claim is premised on allegations that defendants misrepresented various pertinent facts about the individual loans that plaintiff purchased under the Agreement. This cannot be characterized merely as an insincere promise of future performance (*see, Tompkins PLC v Bangor Punta Consol. Corp.*, 194 AD2d 493, 493-494, *lv dismissed* 82 NY2d 888 [misrepresentation of specific product gives rise to fraud claim as well as breach of contract claim]). Nor is the fraud claim rendered redundant by the fact that these alleged misrepresentations breached the warranties made by MCF in the Agreement. These warranties certified that as of the date of sale to First Bank, any individual loan would comply with certain underwriting guidelines. The core of plaintiff's claim is that defendants intentionally misrepresented material facts about various individual loans so that they would appear to satisfy these warranties, because otherwise plaintiff would have neither the obligation nor the desire to purchase them. This is fraud, not breach of contract. A warranty is not a promise of performance, but a statement of present fact. Accordingly, a fraud claim can be based on a breach of contractual warranties notwithstanding the existence of a breach of contract claim (*see, Jo Ann Homes at Bellmore v Dworetz*, 25 NY2d 112, 120-121). This cause of action is reinstated.

■ The motion court also erred in striking defendants' answer. Our review of this issue is complicated by the fact that defendants appealed only from the denial of renewal, not from the original order. Ordinarily, our review would be limited to deciding whether the renewal motion was based on new and previously undiscoverable material facts. If not, then we would not reach the merits of the original order (*Serbalik v General Motors Corp.*, 252 AD2d 801, *lv dismissed* 92 NY2d 1001). However, the motion court has discretion to relax this rule in the interests of justice (*Strong v Brookhaven Mem. Hosp. Med. Ctr.*, 240 AD2d 726). Here, although technically defendants knew from the outset the relevant facts concerning their inability to obtain the Title Documents, the transcripts of the

hearings before the motion court show that the court peremptorily cut off defense counsel's attempts to explain the situation. That fact differentiates this case from those where the party seeking renewal strategically withheld the newly presented information (*see, Foley v Roche*, 68 AD2d 558) or was not diligent in seeking it out initially (*see, Rubinstein v Goldman*, 225 AD2d 328, *lv denied* 88 NY2d 815).

■ Turning to the merits, it was entirely inappropriate to strike defendants' answer. At the very least, MCF's well-documented efforts to induce third parties to execute new title and lien documents in favor of First Bank casts doubt on the motion court's summary conclusion that MCF possessed the documents already but was dishonestly and capriciously withholding them (*see, Citibank [S.D.] v Johnson*, 206 AD2d 942 [dismissal of complaint inappropriate as discovery sanction where plaintiff made good-faith effort to comply]). Striking of pleadings is too drastic a remedy where the party's default is not willful (*Newman v Chartered New England Corp.*, 63 AD2d 617). Indeed, by the time that their answer was stricken, defendants had produced the majority of the documents within a relatively short time period, though they had not been able to meet the deadlines imposed by the court (*see, Harris v City of New York*, 211 AD2d 663, 664). The court also appeared to ignore a genuine factual dispute as to whether First Bank was entitled to demand the Title Documents, given MCF's defense that the course of dealing between the parties showed First Bank accepting assignments of MCF's liens as sufficient documentation of First Bank's property interests (*see, Corner Realty 30/7 v Bernstein Mgt. Corp.*, 249 AD2d 191, 192-193 [court wrongly announced intent to strike pleadings unless plaintiff perfectly complied with discovery demand, ignoring plaintiff's objection to one discovery request as overbroad]). We therefore reverse the portion of the July 15, 1997 order that struck defendants' answer.

■ We affirm the denial of summary judgment to Pirrera because discovery is not complete. First Bank sought documents relating to Pirrera's relationship with MCF, the observance of corporate formalities, and financial records that could shed light on whether MCF was Pirrera's alter ego. First Bank alleges that defendants did not comply with these discovery requests. Due to its impatience to resolve the issue of the Title Documents, the motion court did not allow discovery to proceed further, nor did it address the parties' dispute about the sufficiency of each other's document production. Under CPLR 3212

(f), the court may deny a motion for summary judgment if it appears that "facts essential to justify opposition may exist but cannot then be stated." Veil-piercing is a fact-laden claim that is not well suited for summary judgment resolution (*Forum Ins. Co. v Texarkoma Transp. Co.*, 229 AD2d 341, 342). Before Pirrera's motion can be granted, First Bank is entitled to obtain necessary discovery to ascertain whether there are grounds to pierce the corporate veil (*Aubrey Equities v SMZH 73rd Assocs.*, 212 AD2d 397, 398). If plaintiff is correct that defendants' document production on the alter ego issue was deficient, defendants should not receive a benefit by having this claim dismissed for lack of evidence.

Defendants point out that a corporate officer cannot be held personally liable for the corporation's breach of contract simply because the officer took the challenged actions on the corporation's behalf (*Murtha v Yonkers Child Care Assn.*, 45 NY2d 913, 915). However, this limit on liability only applies where the officer acted in good faith (*Murtha v Yonkers Child Care Assn., supra*, at 915). The breach alleged by plaintiff involves bad-faith misrepresentations. In addition, a corporate officer may be held personally liable for committing fraud on the corporation's behalf (*I. Towjer, Inc. v Tarran*, 236 AD2d 518, 519 [denying summary judgment to sole shareholder and officer of corporate defendant, where the former negotiated the allegedly fraudulent transaction]). Plaintiff's allegations in the complaint, while sketchy, suffice to support the claim at this preliminary stage of the proceedings. We therefore affirm this portion of the order, without prejudice to Pirrera's bringing another summary judgment motion when discovery is complete.

Accordingly, the order of the Supreme Court, New York County (Ira Gammerman, J.), entered March 5, 1998, which, insofar as appealed from by plaintiff, granted defendant Pirrera's motion to dismiss the third cause of action for fraud, and which, insofar as cross-appealed from by defendants, denied defendant Pirrera's motion to dismiss the first, second, fifth and sixth causes of action, and denied defendants' motion for renewal of the court's prior order dated July 15, 1997 striking their answer, should be modified, on the law and the facts, to reinstate plaintiff's third cause of action for fraud and to reinstate defendants' answer, and otherwise affirmed, without costs.

WILLIAMS, ANDRIAS, SAXE and BUCKLEY, JJ., concur.

Order, Supreme Court, New York County, entered March 5,

1998, modified, on the law and the facts, to reinstate plaintiff's third cause of action for fraud and to reinstate defendants' answer, and otherwise affirmed, without costs.