■ MICHAEL C. FREEDMAN et al., Appellants, v EMANUEL R. PEARLMAN et al., Respondents. [706 NYS2d 405] —Order, Supreme Court, New York County (Ira Gammerman, J.), entered January 19, 1999, which granted the motion of defendants-respondents to dismiss, for failure to state a cause of action, the first cause of action in part, and the second through sixth causes of action in their entirety, unanimously modified, on the law, to reinstate against defendant Pearlman that portion of the first cause of action that the motion court sustained against defendant Gemini II, and to reinstate the third and sixth causes of action, and otherwise affirmed, without costs.

This action is based on allegations that plaintiffs were not fairly compensated for work performed for defendants. According to the complaint, the relationship among the parties commenced in November, 1988 when plaintiff-appellant Michael Freedman began work for Gemini Partners, L.P., which was an investment banking partnership consisting of four general partners, including defendant ERP Corporation, of which defendant Emanuel Pearlman was the sole shareholder, and Arthur Goldberg. Freedman's initial salary was $45,000 with an oral promise of a six-month review, plus a significant year-end bonus and "participation in deals Freedman worked on."

In 1989, Freedman, on Pearlman's advice, formed MCF Capital Corporation (MCF) to perform investment and advisory work outside the context of his employment with Gemini. Later that same year, MCF and ERP implemented a successful takeover offer for DiGiorgio Corporation on behalf of a partnership controlled by Goldberg. Pearlman had orally promised Freedman a fee of 10% of any fee Pearlman received in connection with the transaction. However, although Pearlman later received stock options in DiGiorgio, he falsely advised Freedman that he had not received them and never gave Freedman the 10% he was due.

During 1990, at Goldberg's request, Freedman and Pearlman accumulated shares of Bally Entertainment Corporation (hereinafter, along with related Bally entities, referred to collectively as Bally). After Goldberg became a director, and subsequently Chair and CEO of Bally, he engaged Pearlman and Freedman to conduct financial analyses and perform other services in exchange for a promise to compensate them in various ways, including the granting of interests in Bally. Pearlman told Freedman that he would negotiate the parameters of their prospective compensation and that Freedman would be "fairly compensated" and would receive part of an interest in Bally as compensation.

In exchange for this promise, Freedman made substantial efforts in restructuring Bally and accepted cash compensation, individually and through MCF, which was worth far less than the market value of his services.

In 1991, Freedman became a limited partner in Gemini, which was quickly liquidated and reformed as Gemini Partners II, L.P. (Gemini II), with ERP as the sole general partner and Freedman as the sole limited partner, and engaged to work full time to perform advisory work for Bally and DiGiorgio. Monthly payments to Gemini II by Bally and DiGiorgio were meant to cover nominal compensation for Freedman and Pearlman, i.e., $150,000 for Pearlman and $52,000 for Freedman, but Pearlman also advised Freedman orally that he would negotiate with Goldberg for substantial additional fees to be shared "equitably" by Pearlman and Freedman.

Through the next several years, Freedman continued to rely on Pearlman's oral representations that he would receive an interest in Bally and that his compensation would be based on the total amounts received by Pearlman, ERP and Gemini II. In 1994, Pearlman orally proposed to Freedman that all compensation received from Bally and DiGiorgio would be divided with two thirds going to Pearlman and one third going to Freedman, to which Freedman agreed. Pursuant to this promise, in 1994 Freedman received $85,000 in addition to his $52,000 annual draw.

After a falling out, Freedman ceased performing services for defendants in the summer of 1995. In 1996, Freedman discovered that Pearlman, in compensation for some of the work that had been performed by Pearlman and Freedman, had received 100,000 common stock options from Bally at a nominal strike price of $3.80 per share, that were worth approximately $2,700,000. He also discovered that Pearlman had obtained an additional undisclosed $5,000 per month from

Bally from February 1991 through September 1992 and $15,000 per month thereafter. In mid-1996, Goldberg agreed to sell his interest in Bally in a deal valued at over $3,000,000,000 and Pearlman, unbeknownst to Freedman, received a fee of $1,500,000. Pearlman also received an undisclosed fee of $500,000 from Bally for work in connection with a transaction involving Bally Total Health and Fitness. According to Freedman, these fees were derived from work done in part by Freedman and were fully subject to the agreement that he would receive one third of any compensation received for such work. Freedman further alleges that, when he confronted Pearlman about these matters, Pearlman threatened that if he brought suit, Pearlman would interfere with his future employment opportunities, and then "threw him out of the office." Specifically, Freedman alleged that Pearlman informed York Capital Corporation, which had extended a job offer to Freedman, that Freedman had been acting "crazy, that [he] was litigious and questioned whether anyone would want to work with [him]," resulting in the revocation of the offer.

Based on these alleged facts, the complaint alleges causes of action in breach of contract, quantum meruit, fraud, breach of fiduciary duty, breach of duty of good faith and fair dealing, and tortious interference with business relations. Supreme Court dismissed, for failure to state a cause of action, all but that portion of the breach of contract cause of action against Gemini II which seeks recovery based on the agreement to split Bally revenues on a one third/two thirds basis.

On a CPLR 3211 motion made against a complaint, a court must take the allegations as true and resolve all inferences which reasonably flow therefrom in favor of the pleader (see, Sanders v Winship, 57 NY2d 391, 394).

Here, as to that portion of the cause of action for breach of the alleged oral contract that the motion court dismissed, we find that the court properly held that the alleged promises made early in the parties' relationship to provide "fair compensation" and to "equitably" divide the draw were too indefinite to be enforced (see, Varney v Ditmars, 217 NY 223; Von Reitzenstein v Tomlinson, 249 NY 60). The mere fact that Freedman, throughout the parties' relationship, did in fact receive compensation in excess of his draw does not obviate the fact that these particular promises, as alleged by plaintiff, left the amount of that compensation in Pearlman's discretion (see, Martin Delicatessen v Schumacher, 52 NY2d 105).

As to plaintiff's argument that the surviving portion of the alleged oral contract, by which he was allegedly promised in

1994 one third of the fees received by Gemini II from Bally, we find that the motion court erred in finding insufficient allegation of individual liability by Pearlman. Plaintiffs have adequately alleged that ERP, a general partner of Gemini II, functioned as Pearlman's alter ego and that Pearlman acted in bad faith, thereby precluding dismissal as to Pearlman individually at this point in the action.

We find that the motion court properly dismissed the cause of action for quantum meruit, which Freedman asserts alternatively to his claim for breach of contract (*see, e.g., Isaacs v Incentive Sys.*, 52 AD2d 550, 551). The elements of a claim in quantum meruit are: the performance of services in good faith, acceptance of the services by the person to whom they are rendered, an expectation of compensation therefor, and the reasonable value of the services (*Curtis Props. Corp. v Greif Cos.*, 212 AD2d 259, 266-267). Freedman's allegation that he performed services far greater than defendants deserved for the compensation he actually received are not sufficient to state a cause of action in quantum meruit where none of the services allegedly performed are "so distinct from the duties of his employment and of such nature that it would be unreasonable for the employer to assume that they were rendered without expectation of further pay" (*Robinson v Munn*, 238 NY 40, 43; *see also, Cannon v First Natl. Bank*, 98 AD2d 704, *affd* 62 NY2d 1003).

As to the cause of action for fraud, we find that Freedman has adequately stated a cause of action against the defendants that is sufficiently independent from his cause of action for breach of contract (*see, First Bank v Motor Car Funding*, 257 AD2d 287, 291-292) based on his allegation that defendants deliberately concealed the amount of income received from Bally's so that the one-third share Freedman was allegedly entitled to by contract was undercounted.

Additionally, even if Freedman were unable to prove any contractual entitlement to a percentage of all or part of any monies received by defendants from Bally, he has nevertheless stated a cause of action in fraud based on Pearlman's alleged deceit concerning Gemini II's income. Aside from his cause of action for breach of contract, Freedman has alleged that he relied to his detriment on the alleged misinformation concerning the amounts received by defendants in continuing his employment, as he was encouraged to do by Pearlman, in spite of the fact that he could have earned more elsewhere. Even assuming that defendants had no contractual obligation to share those monies with plaintiff, if they were encouraging plaintiff

to remain in their employ based on the representation that he was receiving an appropriate bonus based on overall income, they had an obligation not to affirmatively deceive plaintiff concerning what percentage he was actually receiving, so that plaintiff could make an informed decision as to whether to remain in defendant's employ.

We do not mean to suggest that every employer that pays a bonus is obligated to reveal its income to its employees so that its employees can decide whether their bonuses are fair. However, if plaintiff is able to show that he was deliberately misled about the firm's income by being informed of only part of that income, he may proceed with his cause of action for fraud.

Nor, on this record, do we find that the fraud claim is barred by the Statute of Limitations, since Freedman has alleged that he did not discover the allegedly concealed receipt by defendants until 1996.

As to plaintiffs' claim that defendants Pearlman and ERP breached their implied contractual obligation of good faith and fair dealing, since the only contractual obligation stated by plaintiffs is one of at-will employment, no such obligation is implied (*Murphy v American Home Prods. Corp.*, 58 NY2d 293).

As to the claim of breach of fiduciary duty, plaintiffs have abandoned, on appeal, the argument that the duty owed them was based on a partnership relationship and have not otherwise stated a sufficient relationship to give rise to such a duty. Plaintiffs' allegations, if true, establish no more than that Freedman trusted Pearlman as his employer to treat him fairly, which does not give rise to a fiduciary duty (*see, Ingle v Glamore Motor Sales*, 73 NY2d 183).

Finally, as to the claim of tortious interference with business relations, which requires a showing that the defendant intentionally and through wrongful acts prevented a third party from extending a contractual relationship to the plaintiff (*WFB Telecommunications v NYNEX Corp.*, 188 AD2d 257, *lv denied* 81 NY2d 709), we find that plaintiffs set forth sufficient allegations of an intentionally fallacious communication with prospective employer York Capital Management by defendant Pearlman to survive dismissal at this juncture. Concur—Williams, J. P., Ellerin, Rubin and Andrias, JJ. [As amended by unpublished order entered Sept. 26, 2000.]