OPINION OF THE COURT
Karla Moskowitz, J.
Motion sequence numbers 004 and 005 are consolidated for disposition.
Defendants Jeffrey D. Stavitsky (Stavitsky), W. Paul Brogowski (Brogowski), Jeffrey Brogowski, Douglas Brogowski, Matthew Brogowski and Crescent Food Sales, Inc. (Crescent) move for summary judgment dismissing the complaint as against them.[1] Brogowski also moves for summary judgment on his first and second counterclaims. Plaintiffs, J.A.O. Acquisition Corp. and J.A.O. Holding Company, Inc., cross-move for: (i) partial summary judgment against Stavitsky and Brogowski; (ii) dismissal of the second, sixth, and ninth through eleventh counterclaims as against J.A.O. Holding; (iii) sanctions; and (iv) an order extending discovery and compelling the moving defendants’ depositions.[2]
Plaintiff D.B. Brown, Inc. (the company) is in bankruptcy. The bankruptcy trustee did not participate in these motions and the dismissal motions are ineffective against the company.
Facts
On June 3, 1997, plaintiff, J.A.O. Acquisition Corp., entered into a stock purchase agreement (stock purchase agreement) to purchase all the outstanding stock of the company from. Stavitsky and Brogowski. In section 4 of the stock purchase agreement, Stavitsky and Brogowski made certain representations and warranties regarding the company’s financial statements, *9 accounts receivable, inventory, liabilities, taxes and real property. In section 10.7 of the stock purchase agreement, Stavitsky and Brogowski represented that the company’s net worth was at least $2.2 million. Prior to the closing of the purchase transaction, J.A.O. Acquisition Corp. performed due diligence and discovered that Stavitsky and Brogowski had overstated the company’s net worth. Therefore, on October 10, 1997, simultaneous with the closing, the parties entered into an amendment to the stock purchase agreement (the amendment), in which Stavitsky and Brogowski, inter alia, reduced the company’s net worth to $1,167,630, and reduced the purchase price from $7,350,000 to $6,317,630. The amendment also allocated the purchase price between Stavitsky, who received $2,833,816 at the closing, and Brogowski, who received $3,483,815: $1,483,815 at the closing and an additional $2 million over five years, pursuant to a promissory note that J.A.O. Acquisition Corp. issued to Brogowski (the note). (Brogowski affidavit, exhibit 11.) Plaintiff J.A.O. Holding Company guaranteed the note. (Exhibit 13 to Brogowski defendants’ notice of motion.) At the same time, the company entered into a three-year employment agreement with Brogowski and eight-year consulting agreements with Matthew, Jeffrey and Douglas Brogowski. In addition, the company entered into a noncompetition agreement with Brogowski, in which Brogowski agreed not to compete with the company for five years after he ceased working for it.
Paragraph 2.2 of the amendment, entitled “Post Closing Purchase Price Adjustment,” gave Stavitsky and Brogowski 90 days to deliver the company’s final net worth statement as of October 10, 1997 for J.A.O. Acquisition Corp.’s review, comment and adjustments, if necessary. The amendment contemplated that, after the parties agreed on the adjustments, they would use that final net worth statement as the basis for post-closing price adjustments.
However, plaintiffs assert that, after the closing, plaintiffs hired a “Big Six” accounting firm, Coopers & Lybrand, to determine the appropriate net worth of the company for a post-closing price adjustment. Plaintiffs contend that Coopers & Lybrand discovered that Stavitsky and Brogowski overstated accounts receivable; overvalued physical assets; failed to disclose accounts payable; failed to record liabilities on taxes, salary and insurance; failed to disclose two potential lawsuits by *10 former employees; and failed to disclose that the company’s net worth was significantly less than $1,167,630. On June 9, 1998, plaintiffs’ counsel informed Stavitsky and Brogowski that, after the adjustments indicated in the Coopers & Lybrand. report, the company’s effective net worth was $242,061, requiring a closing price reduction of $925,569. In July 1998, the parties met to discuss the disputed items, but they failed to reach a settlement. Thereafter, plaintiffs commenced this lawsuit.
The complaint alleges 17 causes of action. The first cause of action alleges that Stavitsky and Brogowski breached paragraph 2.2 of the amendment by failing to provide plaintiffs with a statement of the company’s net worth as of October 10, 1997 and failing to reduce the company’s purchase price by $925,569. The second cause of action claims that Stavitsky and Brogowski breached the stock purchase agreement by failing to contribute to the cost of the Coopers & Lybrand audit. The third cause of action alleges that Stavitsky and Brogowski fraudulently induced plaintiffs to purchase the company by misrepresenting the company’s net worth. The fourth and fifth causes of action allege that Stavitsky and Brogowski fraudulently induced plaintiffs to purchase the company by misrepresenting that there were no lawsuits or potential lawsuits against the company, when in fact there were potential lawsuits by two former employees.[3] The sixteenth cause of action alleges that Stavitsky and Brogowski breached guaranties they gave to plaintiffs in connection with certain accounts receivable and that $210,000 remains unpaid with respect to those guarantees. Finally, the seventeenth cause of action seeks rescission and a declaratory judgment that the parties are restored to their original status.
In their answer, the Brogowski defendants assert several counterclaims. However, only the first two counterclaims are at issue here. In the first counterclaim, Brogowski seeks funds allegedly due him under the note and the guaranty. The second counterclaim alleges that plaintiffs breached the Brogowski employment agreement.
*11 Analysis
A. Motion to Dismiss the Complaint
1. Fraud
Brogowski and Stavitsky argue that the court must dismiss the fraud causes of action because those causes of action are duplicative of plaintiffs’ breach of contract claims and because the fraud claims are based on parol evidence. Brogowski and Stavitsky also contend that plaintiffs have not pleaded fraud with sufficient particularity. In addition, Stavitsky and Brogowski aver that plaintiffs had access to all of the company’s books and records, so there is no basis for a claim of misrepresentation. Moreover, Stavitsky and Brogowski claim that the misrepresentation cause of action is untimely because, under section 12.4 of the stock purchase agreement, plaintiff had to bring the misrepresentation claim within one year of the closing.
Stavitsky and Brogowski contend that the fourth and fifth causes of action for fraud are untenable because Stavitsky and Brogowski did not know that their former employees intended to sue the company and that, in violation of sections 12.3 and 12.5 of the stock purchase agreement, plaintiffs settled with one of the former employees without notifying defendants or giving the defendants the opportunity to defend the claim.
The third, fourth and fifth causes of action for fraud survive dismissal. Contrary to defendants’ arguments, these fraud claims do not duplicate the breach of contract claims, are not time barred and are pleaded with sufficient particularity.
First, New York law applies to these fraudulent inducement claims. While the stock purchase agreement provides that the parties must apply New Jersey law to claims that arise under the contract, the fraud claims sound in tort, not contract, so the contractual choice of law provision in the stock purchase agreement is inapplicable to the fraud causes of action. (See, Knieriemen v Bache Halsey Stuart Shields, 74 AD2d 290, appeal dismissed 50 NY2d 1021.)
In determining whether New York or New Jersey law applies, the court must first determine whether there is an actual conflict between New York and New Jersey law regarding the coexistence of fraudulent inducement and breach of contract causes of action. (Matter of Allstate Ins. Co. [Stolarz], 81 NY2d 219 [1993].) Here there is no conflict. Although there is early New Jersey case law that appears to prohibit tort claims in commercial contractual disputes, more recent New Jersey deci *12 sions permit fraudulent inducement claims in breach of contract cases. (Florian Greenhouse v Cardinal IG Corp., 11 F Supp 2d 521, 527-528 [D NJ 1998].) In New York, the case law provides that a plaintiff may assert fraud and breach of contract claims in the same complaint So long as the fraud is not simply a misrepresentation of the promise to perform in the future. (See, First Bank of Ams. v Motor Car Funding, 257 AD2d 287, 291-292 [1st Dept 1999].)
However, even assuming, arguendo, that there was a conflict between New York and New Jersey law, under New York conflict of law principles, fraud claims are governed by the law of the place of injury — in this case New York, where plaintiffs are located. (See, Telecom Intl. Am. v AT&T Corp., 67 F Supp 2d 189 [SD NY 1999]; see also, Odyssey Re [London] v Stirling Cooke Brown Holdings, 85 F Supp 2d 282, 292 [SD NY 2000], affd 242 F3d 366 [2d Cir 2001].)
Recently, in First Bank of Ams. v Motor Car Funding (supra at 291-292), the First Department articulated the test the courts should apply when faced with a challenge to a fraud claim in a breach of contract action:
“A fraud claim should be dismissed as redundant when it merely restates a breach of contract claim, i.e., when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract. * * * By contrast, a cause of action for fraud may be maintained where a plaintiff pleads a breach of duty separate from, or in addition to, a breach of the contract. * * * For example, if a plaintiff alleges that it was induced to enter into a transaction because a defendant misrepresented material facts, the plaintiff has stated a claim for fraud even though the same circumstances also give rise to the plaintiffs breach of contract claim” (citations omitted).
In First Bank, the plaintiff bank purchased used car loans from the defendant, a car financing company. In the loan purchase agreements, defendant warranted that the loans complied with certain underwriting guidelines. In addition, when offering the loans to plaintiff, the defendant made representations about the quality of the collateral, the borrowers’ credit history and the amounts of the down payments. Plaintiff alleged that many of these representations were false and that defendant induced plaintiff to buy less valuable loans by intentionally misrepresenting material facts about the indi *13 vidual loans so that the loans appeared to satisfy the warranties. The Court held that this misrepresentation was fraud, not a breach of contract because a warranty is not a promise to perform, but a statement of present fact. Moreover, the Court stated that the fraudulent inducement claim did not duplicate the breach of contract claim, and therefore survived a dismissal motion because the defendant’s misrepresentations could not be “characterized merely as an insincere promise of future performance.” (Id. at 292 [citation omitted].) The Court specifically found that the fraud claim was not rendered redundant “by the fact that these alleged misrepresentations breached the warranties made by [defendant] in the Agreement.” (Id., citing Jo Ann Homes at Bellmore v Dworetz, 25 NY2d 112, 120-121 [1969].)
In this case, plaintiffs allege that Stavitsky and Brogowski misrepresented various material facts about the inventory, the accounts receivable and their collectibility, the net worth of the company and potential lawsuits. While plaintiffs admit that they had the opportunity to perform “due diligence,” plaintiffs assert that the books and records that Stavitsky and Brogowski showed plaintiffs did not reflect the significant discrepancies and inaccuracies that plaintiffs’ accountants discovered in the postclosing audit. As in First Bank (supra), these misrepresentations cannot be characterized as “merely insincere promises of future performance.” Contrary to defendants’ arguments that these misrepresentations breached specific warranties in the stock purchase agreement do not make these fraud claims a mere restatement of the breach of contract claims. Stavitsky and Brogowski warranted, inter alia, that, as of the closing date: the financial statements fairly presented the financial position of the company; the accounts receivable were bona fide and collectible; and the inventory consisted of items of quality and quantity usable or saleable. (Exhibit 1, § 4.) The core of plaintiffs’ claim is that defendants intentionally misrepresented material facts about the inventory, the accounts, and the financial viability and net worth of the company, so that those warranties appeared satisfied. This is an appropriate fraud claim. (First Bank of Ams. v Motor Car Funding, supra; see also, Freedman v Pearlman, 271 AD2d 301, 304 [1st Dept 2000]; RKB Enters. v Ernst & Young, 182 AD2d 971, 972 [3d Dept 1992].)
Moreover, the breach of contract claims seek redress for breaches that are separate and distinct from the fraud claims. The first cause of action for breach of contract alleges that *14 Stavitsky and Brogowski failed to provide plaintiffs with a statement of the company’s net worth after the closing, and the second cause of action for breach of contract alleges that Stavitsky and Brogowski failed to pay plaintiffs one half of the accountants’ fees, in violation of paragraph 2.2 of the amendment. There is no redundancy between these claims and the fraud claims.
Defendants’ argument that the fraud claims are barred because they are based on parol evidence, is also rejected. “[W]here the complaint states a cause of action for fraud, the parol evidence rule is not a bar to showing the fraud — either in the inducement or in the execution,” despite a general merger clause. (Danann Realty Corp. v Harris, 5 NY2d 317, 320 [1959].)
Moreover, plaintiffs have pleaded the third, fourth and fifth causes of action with sufficient particularity. Plaintiffs’ allegations in paragraph 39 of the complaint, and in the affidavits in opposition to these motions, set forth Stavitsky and Brogowski’s specific misrepresentations in the books and records, inventory and financial figures and, in paragraphs 45 through 68, plaintiffs detail Stavitsky and Brogowski’s alleged misrepresentations regarding potential lawsuits by former employees.
Defendants also argue that plaintiffs’ misrepresentation claims are untimely pursuant to section 12.4 of the stock purchase agreement that requires plaintiffs to bring all claims related to a breach of a covenant of the stock purchase agreement within one year of the closing. However, section 12.4 of the stock purchase agreement provides that plaintiffs shall bring any claim that they have under section 10 of the stock purchase agreement by giving the defendants notice under section 12.3 on or before the applicable “Expiration Date.” The “Expiration Date” is then defined as:
“(a) the first anniversary of the Closing Date — any claims that are not specified in any of the succeeding clauses; and (b) the date on which the applicable statute of limitation expires — any claims related to (i) a breach of any covenant or agreement to be performed at least in part after the Closing Date or (ii) a breach of any representations or warranties of a party to this Agreement that were untrue when made with an intent to mislead or defraud.” (Emphasis added.)
Here, plaintiffs’ claims are not governed by the one-year limitation. Plaintiffs’ breach of contract claims involve breach *15 of covenants regarding a postclosing price adjustment, claims which are plainly governed by the six-year breach of contract statute of limitations as claims falling under section 12.4 (b) (i). (See, CPLR 213.) The breach occurred in late 1997 or early 1998, and this action was commenced in October 1999, certainly within the six years. The fraudulent inducement claims are similarly governed by the statutory six-year limitations period (CPLR 213), because they fall under section 12.4 (b) (ii), as breach of representations that were “untrue when made with an intent to mislead or defraud,” and therefore, were also timely. (Exhibit 1 to defendants’ notice of motion, stock purchase agreement, § 12.4 [b] [ii].)
2. Rescission
The remedy of rescission of the stock purchase agreement is unavailable to plaintiffs because plaintiffs have sold the business to a third party, and the company is in bankruptcy. However, there are a wide variety of equitable remedies, short of rescission, that may be available to plaintiffs, such as restitution or reformation, as well as damages for fraudulent inducement, that would indemnify the plaintiffs for the loss they suffered as a result of the inducement. (Deerfield Communications Corp. v Chesebrough-Ponds, Inc., 68 NY2d 954, 956 [1986], quoting Sager v Friedman, 270 NY 472, 481 [1936].) Therefore, the seventeenth cause of action is dismissed to the extent that it seeks rescission.
3. Breach of Contract
Stavitsky and Brogowski argue that the breach of contract claims fail because plaintiffs have never submitted the documentation required by the terms of paragraph 2.2 of the amendment, regarding the postclosing purchase price adjustment, and disputes regarding the net worth statement. Further, defendants claim that plaintiffs have never demonstrated that defendants’ determination of the company’s net worth was incorrect.
The first cause of action, however, is not ripe for summary judgment. The parties have submitted opposing affidavits about whether Stavitsky and Brogowski sent plaintiffs a net worth statement as required by paragraph 2.2 of the amendment. (See, affidavit of W. Paul Brogowski, dated Feb. 27, 2001, ¶ 17; Ortenzio affidavit, ¶¶ 15, 17; affidavit of Victor Tutino, dated Apr. 6, 2001, ¶ 5.) Therefore, the parties have raised a triable issue of fact regarding the net worth statement.
The second cause of action for breach of contract based on Stavitsky and Brogowski’s failure to pay Coopers & Lybrand’s *16 fees fails as a matter of law. Paragraph 2.2 of the amendment that provides, in relevant part, that, within 30 days after defendants delivered a statement of the company’s net worth, plaintiffs were required to notify defendants in writing of each disputed item, and that, if they could not resolve the dispute within 15 days of the defendants’ delivery of the notice, the dispute was to be resolved by a “Big Six” certified independent accounting firm selected by both defendants and plaintiffs. Under those circumstances, the parties would share the cost of the audit. Here, plaintiffs alone hired Coopers & Lybrand to do an initial audit for the postclosing price adjustment. The buyers and sellers did not hire Coopers & Lybrand pursuant to paragraph 2.2 of the amendment and, thus, Stavitsky and Brogowski are not obligated to share the cost of the auditor with plaintiffs.
Finally, that branch of the motion seeking summary judgment dismissing the sixteenth cause of action is denied to give plaintiffs an opportunity to account to Stavitsky and Brogowski to demonstrate the basis of this claim, and to permit defendants to dispute it. There is a question of fact as to what receivables, if any, remain uncollected.
B. Summary Judgment on the Counterclaims
Brogowski has failed to demonstrate a basis for summary judgment in his favor on the first counterclaim for amounts allegedly due him under the note. The note, while providing for no setoffs against any amounts due, specifically makes an exception for claims of “wilful fraud or wilful misrepresentation” by the seller in connection with the stock purchase agreement, the precise claims plaintiffs make here. Accordingly, Brogowski’s claim for judgment under the note must await the court’s determination of plaintiffs’ fraud claims.
In seeking summary judgment on the second counterclaim, Brogowski claims that, because the fraud and misrepresentation claims are meritless, he is entitled to payment pursuant to J.A.O. Holding’s guaranty of his employment agreement with the company. At oral argument (transcript, at 27) the court denied Brogowski’s motion for summary judgment on the second counterclaim and granted plaintiff’s cross motion dismissing the second counterclaim because there is no evidence that J.A.O. Holding guaranteed Brogowski’s employment contract with the company.
C. Cross Motion for Partial Summary Judgment against Stavitsky and Brogowski
Plaintiffs’ cross motion for partial summary judgment against Stavitsky and Brogowski is denied. Plaintiffs’ argu *17 ment that the cross motion must be granted because Brogowski admits in his affidavit (para 30 [c], [e], [f], [n]) that he should have reduced the company’s purchase price by $97,919 is without merit. Brogowski and Stavitsky correctly contend that the concessions discussed in his affidavit occurred at a meeting between Stavitsky and Brogowski and plaintiffs in July 1998 when the parties were attempting to settle their difference. The concessions were not admissions. Rather, the concessions that Brogowski and Stavitsky made were an attempt to resolve their dispute with the plaintiffs without litigation. Plaintiffs, in fact, admit that the parties were not able to reach a “meeting of the minds” at the July 1998 meeting and the disputes regarding the company’s net worth have not been resolved.
Plaintiffs’ cross motion for dismissal of the sixth and the ninth through eleventh counterclaims is denied. Plaintiffs fail to address these counterclaims in their papers, thereby providing no basis for their dismissal.
Plaintiffs’ request for sanctions, costs, and attorneys’ fees, pursuant to 22 NYCRR 130-1.1, is denied. There is no basis for finding this motion frivolous. (Transcript, at 36.)
Accordingly, it is ordered that the motions are granted to the extent of granting partial summary judgment in favor of defendants dismissing the second cause of action, and dismissing the request for rescission in the seventeenth cause of action, and are otherwise denied; and it is further ordered that the cross motion is granted to the extent of granting partial summary judgment in favor of plaintiffs dismissing the second counterclaim.

. At oral argument, the defendants stated that the summary judgment motion was in the nature of a motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action (transcript, at 27). Thus, both the parties and the court have analyzed the fraud causes of action as though defendants seek dismissal pursuant to CPLR 3211. The remainder of the causes of action are analyzed pursuant to CPLR 3212.

. At oral argument (transcript, at 19) the court granted plaintiffs’ cross motion to the extent of extending discovery and compelling depositions.

. The sixth through fifteenth causes of action are not in issue on these motions. The sixth through fourteenth claims are stated on behalf of the company and the company is in bankruptcy. The bankruptcy trustee has not yet pursued those claims and the claims cannot be litigated without the trustee’s participation. The fifteenth cause of action is asserted solely against First Union National Bank and also is not relevant to these motions and cross motion.