21-1221-cv
*Blanton v. Educ. Affiliates, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of May, two thousand twenty-two.

PRESENT:
        RICHARD C. WESLEY,
        JOSEPH F. BIANCO,
        MYRNA PÉREZ,
           *Circuit Judges.*

---

Wynn F. Blanton,

        *Plaintiff-Appellant,*

        v.                               21-1221-cv

Education Affiliates, Inc., St. Paul's School of Nursing, Inc.,

        *Defendants-Appellees.*

---

FOR PLAINTIFF-APPELLANT:        MITCHELL J. ROTBERT, Rotbert Business Law, P.C., Gaithersburg, MD.

FOR DEFENDANTS-APPELLEES:        ISAAC J. BURKER (Joseph A. Saccomano, Jr., *on the brief*), Jackson Lewis P.C., White Plains, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Kovner, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant Wynn F. Blanton appeals from the district court's April 12, 2021 judgment dismissing his claims pursuant to Federal Rule of Civil Procedure 56. Blanton brought a claim based on purported violations of his "associational rights" under the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101, *et seq.*, as well as claims for common law fraud, breach of fiduciary duty, and breach of contract under New York law.[1] His claims focus on his 2016 termination as the Campus President of defendant-appellee St. Paul's School of Nursing, a nursing school owned by defendant-appellee Education Affiliates, Inc. (collectively, "defendants-appellees").

Defendants-appellees contend that Blanton was terminated as Campus President of St. Paul's Staten Island campus ("St. Paul's-SI") because he failed to raise the school's passage rate on the nursing licensing exam, the "NCLEX," within an adequate period of time. A few months before Blanton began in the position on October 1, 2013, the New York State Education Department (the "NYSED") sent the school a letter, dated August 30, 2013, in which the Department conferred provisional-degree-granting authority on the school until June 1, 2015. As the letter explained, because of its students' low passage rate on the NCLEX, the school was not given permanent-degree-granting authority. Specifically, the NYSED said in the letter that any degree-granting authority beyond June 1, 2015 was contingent upon "the school's progress toward achieving and sustaining measures of student success including the required minimum 75 percent

---

[1] Blanton does not appeal the dismissal of his breach of contract claim.

NCLEX pass rate for first time candidates." Joint App'x at 198. In 2016, three years into his tenure, Blanton was terminated after it was learned that the passage rate for St. Paul's-SI was 47%.

Blanton, however, disputes that his termination was due to the continually low passage rates on the NCLEX. Instead, Blanton argues that a motivation for his termination was the costs associated with his wife's medical care that his employer was responsible for paying under his health insurance plan. In 2015, Blanton's wife was hospitalized for approximately six months during which she incurred over $200,000 in medical expenses. Thus, he contends that he was terminated because defendants-appellees no longer wanted to pay the significant costs of his wife's treatment under the Preferred Provider Organization plan. Moreover, with respect to his fraud and breach of fiduciary duty claims, Blanton contends that the defendants-appellees fraudulently offered him a conditional bonus at the time he was hired in 2013—namely, $100,000 if the NYSED removed the school from provisional status and restored its fully approved degree-granting authority by June 1, 2015—even though, according to Blanton, such approval was impossible to achieve by that date.

The district court (Kovner, *J.*) dismissed the action in an oral ruling, granting summary judgment to defendants-appellees on all of Blanton's claims. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to affirm.

## DISCUSSION

### I. Standard of Review

The district court's grant of summary judgment is reviewed *de novo*. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). Accordingly, we construe the evidence "in the

3

light most favorable to the nonmoving party" and draw "all reasonable inferences" in that party's favor. *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). A party is entitled to summary judgment where the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a factual dispute to be genuine, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, mere "[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact," and "[t]he mere existence of a scintilla of evidence supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (internal quotation marks and citation omitted).

## II.    ADA Claim

Blanton contends that genuine issues of material fact precluded summary judgment on his ADA claim for associational discrimination based upon his wife's medical expenses. We disagree.

The ADA prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). In analyzing Blanton's associational discrimination claim, we apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 468 (2d Cir. 2019) (stating that associational discrimination cases are subject to the *McDonnell Douglas* burden-shifting framework). Specifically, under this framework, "[a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then

4

produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). With respect to the causation requirement, Blanton must prove "but for" causation—that is, but for his wife's medical costs, he would not have been terminated. *See Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019).

To bring a *prima facie* case under the ADA, Blanton must prove: (1) that his employer is subject to the ADA; (2) he, or his associate, is disabled within the meaning of the ADA or perceived to be by his employer; (3) he was qualified to perform the essential functions of his job; (4) he suffered an adverse employment action; and (5) the adverse action was imposed because of the disability. *See Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (per curiam) (setting forth elements of a *prima facie* ADA case); *accord Biondo v. Kaledia Health*, 935 F.3d 68, 73 (2d Cir. 2019). Even assuming *arguendo* that a *prima facie* case was established, Blanton failed to produce evidence from which a rational jury could find that the legitimate, non-discriminatory reason proffered by defendants-appellees for his termination—namely, the school's unacceptable NCLEX passage rate—was pretextual and that he would not have been terminated but for his wife's medical expenses being paid by his employer.

The record is replete with uncontroverted evidence that, from the beginning of Blanton's tenure as Campus President, the primary focus of his job was improving the school's passage rate on the licensing exam. Such evidence included numerous meetings and correspondence involving Blanton, other institutional leaders at the school, and state education officials regarding strategies for increasing students' scores. At his deposition, Blanton admitted the extent of these efforts aimed at improving the passage rate. As Blanton wrote in an August 20, 2014 email to his

5

supervisor regarding NCLEX scores, "those numbers are the last thing I think of before I go to bed at night and the first thing I think of when I wake up in the morning." Joint App'x at 317.

Blanton was repeatedly warned that the passage rate needed to improve substantially. For example, a September 29, 2015 email from Dr. Robert Anders, the Vice President of Nursing Education Affiliates, Inc., to other senior leaders, including Blanton, emphasized the importance of the passage rate and explained that test results for "1st quarter 2016 need[] to be stellar." Joint App'x at 327. Despite this focus, the passage rate over the first several years of Blanton's tenure remained substantially lower than expected. His performance reviews throughout his tenure made clear that a key basis for his evaluation was the passage rate at each point in time when he was evaluated. For example, in Blanton's October 2015 performance review, under the section designated for "MOST SIGNIFICANT TASKS WHERE RESULTS FELL SHORT OF DESIRED ACCOMPLISHMENTS DURING THE REVIEW PERIOD," the first item that was listed was "NCLEX Rates: 2013 was 45%, 2014 was 44%, 2015 is 55%." Joint App'x at 332. Under the section designated for "DEVELOPMENT NEEDS FOR PERFORMANCE IMPROVEMENT," the first item was "[c]ontinued micro-management for NCLEX improvement. Must get rates up above 80%." Joint App'x at 336. With a particular focus on the first quarter of 2016, Blanton assisted in the preparation of a report in December 2015 that forecasted a NCLEX passage rate of 72.73% for that quarter. In March 2016, however, Blanton's first-quarter 2016 NCLEX forecast dropped to 59%. In early April 2016, defendants-appellees learned that St. Paul-SI's passage rate for first quarter 2016 was 47% and, on April 18, 2016, Blanton was terminated.

Thus, the uncontroverted evidence in the record demonstrates that Blanton consistently failed to raise the NCLEX passage rate at St. Paul's-SI to an acceptable level. Importantly,

6

concerns regarding this lack of improvement were raised with Blanton *before* his wife's hospitalization in 2015 and the accrual of any employer costs associated therewith. For example, Blanton's first performance review in June 2014 noted the need to improve the 45% passage rate from 2013.

In contrast to this overriding focus on the passage rates, Blanton was never once questioned about any medical costs that defendants-appellees were incurring as a result of his wife's medical issues. In fact, Education Affiliates, Inc.'s Chief Executive Officer, Duncan Anderson, submitted an affidavit in which he stated—unequivocally—that "[a]t no time during Plaintiff's employment was [he] aware of any information about the mental or physical condition of Mr. Blanton's wife . . . . [or] of the costs of the medical expenses that Mr. Blanton's wife was incurring for EA's group medical plan." Joint App'x at 366–67. Blanton has no evidence to contradict that sworn statement. Instead, Blanton cites a February 9, 2015 text message he sent to the Regional Vice President, which stated in its entirety: "My wife is being admitted this afternoon into the Carrier psychiatric facility in Belle Meade. I have been working on this since late Friday. Liz & Ann are aware. Will keep you poste[d]." Joint App'x at 476. This text message, Blanton argues, supports an inference that those with the power to terminate him were "aware of Blanton's wife's long-term hospitalization and medical issues for which high cost is readily inferable." Appellant's Br. at 17. However, courts "must . . . carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999).

In short, even construing the evidence most favorably to Blanton, no rational jury could conclude that the proffered reason for his termination was a pretext for associational discrimination

7

and that his wife's medical costs to the employer were the "but for" cause of his termination. Accordingly, the district court properly granted summary judgment to defendants-appellees on the ADA claim.

## III. Fraud Claim

Blanton next argues that defendants-appellees committed fraud by offering him a $100,000 bonus to induce him to take the job as Campus President. He claims that the offer was a material misrepresentation because it was impossible for the school to achieve permanent-degree-granting authority by June 15, 2015, and the school knew so when making him the offer. To establish common law fraud under New York law, Blanton must demonstrate "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009).

Here, Blanton has failed to raise a triable issue of fact as to a material misrepresentation regarding the bonus. Blanton offers no evidence from which a rational jury could infer that it was impossible to achieve permanent-degree-granting authority by June 15, 2015. Moreover, even assuming *arguendo* that achieving that benchmark would be extremely difficult to achieve, there is nothing fraudulent about defendants-appellees' decision to link the payment of a substantial $100,000 bonus to achieving a difficult goal. Similarly, Blanton points to no evidence in the record to support his speculative assertion that he would not have been paid the $100,000 bonus if the school had received permanent-degree-granting authority by June 15, 2015.

In short, "fraud cannot be predicated upon statements which are promissory in nature at the time they are made and which relate to future actions or conduct." *Brown v. Lockwood*, 432 N.Y.S.2d 186, 194 (App. Div. 2d Dep't 1980). Because the statements regarding the bonus are

8

"unfulfilled promissory statements as to what will be done in the future," and there is no evidence from which a rational jury could find any material misrepresentation regarding the bonus that induced Blanton to accept the employment, such statements "are not actionable as fraud." *Id*.

Accordingly, the district court properly granted summary judgment for defendants-appellees on the fraud claim.

## IV. Breach of Fiduciary Duty Claim

Similar to his fraud claim, Blanton brings a breach of fiduciary duty claim and argues that it was a breach of fiduciary duty for his employer to offer him a bonus and induce him to become Campus President of St. Paul's-SI when the predicate for the bonus—receiving permanent-degree-granting authority from the NYSED—was impossible to achieve. To establish a breach of fiduciary duty claim under New York law, Blanton must prove: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011); *accord Rut v. Young Adult Inst., Inc.*, 901 N.Y.S.2d 715, 717 (App. Div. 2d Dep't 2010). Blanton's claim fails because he cannot establish the existence of any fiduciary duty.

As Blanton concedes, no fiduciary duty was created based on his employment alone. *See* Appellant's Br. at 32; *see also Rather v. CBS Corp.*, 886 N.Y.S.2d 121, 125 (App. Div. 1st Dep't 2009) ("[E]mployment relationships do not create fiduciary relationships."). Instead, Blanton relies on New York common law that recognizes that "[a] fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation . . . when confidence is reposed on one side and there is resulting superiority and influence on the other." *Eurycleia Partners*, 12 N.Y.3d at 561 (internal

9

quotation marks and citation omitted). Blanton asserts that, by accepting the position as Campus President subject to receiving a potential bonus that he believed was possible to achieve, he "reposed confidence" in Eric Jacobs, Education Affiliates, Inc.'s Regional Vice President, who offered him the position and "had superiority and influence on Blanton." Appellant's Br. at 32.

Despite Blanton's characterization, the uncontroverted evidence establishes that his hiring was an ordinary, arm's length commercial transaction, and "[w]hen parties deal at arm[']s length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *In re Mid–Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir. 2002) (internal quotation marks omitted); *accord SNS Bank, N.V. v. Citibank, N.A.*, 777 N.Y.S.2d 62, 65 (App. Div. 1st Dep't 2004). Blanton advances insufficient evidence from which a rational jury could find that this garden-variety hiring process was an extraordinary circumstance creating a fiduciary relationship between an employer and employee. At his deposition, Blanton testified merely that there was "an element of trust" in his dealings with Jacobs because he "had a three-year working relationship with Eric Jacobs within the company." Joint App'x at 101. The longevity of that working relationship, however, does not transform it into a fiduciary relationship, and Blanton acknowledged at his deposition that he understood Jacobs was "representing Education Affiliates when he was discussing this offer." Joint App'x at 101. Under New York law, even if Blanton trusted Jacobs "as his employer to treat him fairly, [it] does not give rise to a fiduciary duty." *Freedman v. Pearlman*, 706 N.Y.S.2d 405, 409 (App. Div. 1st Dep't 2000).

In short, because the uncontroverted evidence demonstrates that the employment relationship developed as part of an arm's length transaction in which no fiduciary relationship

existed or was formed, the district court properly granted summary judgment to defendants-appellees on the breach of fiduciary duty claim.

*           *           *

We have considered all of Blanton's remaining arguments and conclude that they are without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court