In re MARINE ENERGY SYSTEMS
CORPORATION, Debtor.

W. Ryan Hovis, Trustee for Marine
Energy Systems Corporation,
Plaintiff,

v.

General Dynamics Corporation, Electric
Boat Corporation, Siemens Westinghouse Power Corporation, and Viacom, Inc., Defendants.

Bankruptcy No. 97–01929–W.
Adversary No. 98–80220–W.

United States Bankruptcy Court,
D. South Carolina.

July 31, 2006.

250

Stephen Elliott Gonzales, North Charleston, SC, Steven Angstreich, Thomas S. Harty, Levy, Angstreich, Finney, et al., Philadelphia, PA, for Debtor.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

JOHN E. WAITES, Bankruptcy Judge.

This matter comes before the Court on Motion for Summary Judgment ("Motion") filed by General Dynamics Corporation and Electric Boat Corporation ("Defendants"). Defendants seek summary judgment on the "New Fraud Allegations," defined herein, alleged by W. Ryan Hovis ("Plaintiff"), as Trustee for Marine Energy Systems Corporation ("MESC") in the Third Amended Complaint. Pursuant to Bankr.R. Civ. P. 7056, the facts of the case, and applicable law, this Court makes the following Findings of Facts and Conclusions of Law.[1]

### FINDINGS OF FACT

1. Rather than restate the Findings of Fact set forth in the prior order, entered April 25, 2005, granting in part, Defendants' motion for summary judgment,[2] the Court adopts those Findings of Fact set forth in the April 25, 2005 Order to the extent that those findings are consistent with the findings herein.[3]

2. MESC filed a voluntary petition under Chapter 11 on March 4, 1997. MESC subsequently filed its schedules, a disclosure statement, and a plan of reorganization. None of the documents filed by MESC indicated that it had a claim against Defendants.

3. Based upon the documents filed by MESC, the Court confirmed MESC's plan on July 2, 1998.

4. On October 15, 1998, MESC, as a debtor in possession, filed this adversary proceeding against Defendants.

5. MESC's plan of reorganization failed and its case was converted to a case under Chapter 7. Plaintiff was appointed trustee in this matter and has pursued various actions against Defendants and other parties.

6. Of the actions asserted against Defendants, only the actions for fraud and negligent misrepresentation remain for trial.

7. Since the order granting Defendants partial summary judgment, Plaintiff supplemented his answers to Defendants' interrogatories. Plaintiff's amended interrogatory answers included a list of approximately thirty-seven alleged misrepresentations that Plaintiff attributes to Defendants. Eighteen of the alleged misrepresentations were not previously asserted by Plaintiff (these eighteen representations are referred to herein as the "New Fraud Allegations").

8. Defendants sought to bar Plaintiff from presenting evidence at trial on the New Fraud Allegations. The Court, at that time, declined to bar Plaintiff's New Fraud Allegations, but ruled that discovery would be reopened to enable Defendants to conduct discovery on the New Fraud Allegations.

9. On October 26, 2005, Defendants served Plaintiff with its Second Set of Interrogatories and Requests for Production.

10. On December 28, 2005, Defendants filed a motion to compel Plaintiff to provide answers to Defendants' discovery requests.

---

1. To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also adopted as such.

2. The previous order may be found at *Hovis v. General Dynamics Corp.*, 325 B.R. 158 (Bankr.D.S.C.2005).

3. The undersigned was assigned this matter on March 1, 2006 after the retirement of the previous judge.

11. Plaintiff thereafter responded to Defendants' discovery requests but Defendants asserted that Plaintiff's answers were insufficient and evasive.

12. After a hearing on the matter, the Court granted Defendants' motion to compel by order entered March 28, 2006. The Court found that Plaintiff's responses to Defendants' second set of interrogatories to be deficient and ordered Plaintiff to amend his responses. Particularly, the Court found that Plaintiff should identify in his answer the precise documents containing the alleged misrepresentations rather than generally referring to all documents previously produced.

13. Plaintiff served Plaintiff's Amended Answers to Defendants' Second Set of Interrogatories and Requests for Production of Documents on April 25, 2006. Relevant portions of this document were attached as an exhibit to the Motion.

14. Defendants moved for summary judgment on June 16, 2006. Defendants seek summary judgment on grounds that Plaintiff's claims are barred by non-reliance clauses contained in certain contractual documents and by the doctrines of *res judicata* and judicial estoppel. Defendants also assert that Plaintiff cannot prove one or more of the elements necessary to sustain his actions. Defendants' Motion is supported by the declarations of

Thomas Plante ("Plante") and David Jordan ("Jordan").[4]

15. Plaintiff responded to Defendants' Motion and contends that Defendants arguments are barred by the law of case doctrine and otherwise responds that there are genuine issues of material fact to be resolved at trial. Plaintiff's opposition to summary judgment was supported by a declaration from Gilliam, dated October 24, 2002. Plaintiff also attaches numerous other exhibits including various expert reports, deposition transcripts, an affidavit from Plante, and the affidavits of former MESC employees Jordan and Nickerson.[5]

16. At the hearing on the Motion, Plaintiff asserted that each of the alleged misrepresentations were properly identified in his amended responses to Defendants' interrogatories. Plaintiff also acknowledged that each alleged misrepresentation was in writing and supported by the documents identified in response to Defendants' interrogatories and agreed that if such a representation did not appear in the identified documents that the allegation would fail.[6]

## CONCLUSIONS OF LAW

### I. STANDARD FOR GRANTING SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this adver-

---

4. Plaintiff moved to strike a declaration of Jordan, presented by Defendants, on grounds that statements contained therein were not properly disclosed to Plaintiff during the discovery process. Plaintiff does not set forth particular paragraphs of Jordan's declaration that are objectionable but it appears that Plaintiff's Motion to Strike is based primarily on Jordan's alleged conversations with William Gilliam ("Gilliam"). The Court finds that it is not necessary to consider the Motion to Strike at this time because consideration of Jordan's declaration does not change the result of this Order, as this Order is not based upon Jordan's conversations with Gilliam.

5. Nickerson and Jordan were employed by both Defendants and MESC. Nickerson served as president of MESC after MESC purchased the assets from Defendants under the APA, defined herein. Jordan's affidavit indicates that he was an officer of MESC. It also appears that Jordan was employed by MESC shortly after his employment with General Dynamics.

6. Defendants also filed a reply brief. Plaintiff moved to strike this brief. That motion is not necessary to consider at this time. Consideration of Defendants' reply brief would not change the result of this order.

sary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is a favored mechanism "to secure the 'just, speedy and inexpensive determination' of a case." *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317, 1322–23 (4th Cir. 1995) (quoting Fed.R.Civ.P. 1).

"Where a movant [supports] its motion with affidavits or other evidence which, unopposed, would establish its right to judgment, the non-movant must proffer countering evidence sufficient to create a genuine factual dispute." *In re Dig It, Inc.*, 129 B.R. 65, 66 (Bankr.D.S.C.1991). "To counter a motion for summary judgment, the non-movant may not rest on its pleadings or mere assertions of counsel." *Id.* at 66–67. The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir.1990)). The mere existence of disputed facts does not require that a case go to trial. *Thompson*, 57 F.3d at 1323. "The disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict." *Id.* Any inferences drawn in favor of the nonmoving party must "fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *Id.*

## II. GOVERNING LAW

Plaintiff contends that Delaware law governs its remaining tort claims based upon a choice of law clause contained in the Asset Purchase Agreement ("APA") entered into by New Charleston Capital ("NCC"),[7] the predecessor in interest to the rights of MESC in the assets purchased in the APA, and General Dynamics.[8] This Court disagrees and finds that South Carolina law governs Plaintiff's remaining tort claims.

Section 10.13 of the APA, titled as "Governing Law," provides that Delaware law governs "all questions concerning the construction, validity, and interpretation" of the APA. This choice of law provision, by its terms, only governs contractual disputes between the parties and does not determine the applicable law for tort actions. *See e.g., J.A.O. Acquisition Corp. v. Stavitsky*, 192 Misc.2d 7, 745 N.Y.S.2d 634 (N.Y.Sup.Ct.2001) (finding a buyers' fraud claims against sellers of stock sounded in tort, not contract, so contractual choice of law provision in their stock purchase agreement did not apply to their fraud causes of action). This Court previously recognized this distinction in the April 25, 2005 order in which it applied Delaware law to issues concerning Plaintiff's claims regarding the APA and South Carolina law to Plaintiff's tort claims. *Hovis*, 325 B.R. at 166–167.

7. Gilliam was an officer of both NCC and MESC. It appears that MESC was formed by Gilliam to acquire the assets purchased by NCC from General Dynamics. For purposes of this Order, the Court may refer to NCC as MESC where MESC is the successor to the rights of NCC.

8. For reasons not fully developed by Plaintiff, Plaintiff sought to apply Delaware law to determine the elements of each cause of action but sought to apply South Carolina law to determine the extent of MESC's alleged damages.

For tort claims, South Carolina courts apply the law of the state where the wrong occurred. *See Witt v. American Trucking Associations, Inc.*, 860 F.Supp. 295, 300–01 (D.S.C.1994) (finding, in fraud action, that the tort law of Indiana applied where Plaintiff suffered loss in Indiana). In this case, the alleged wrong occurred in South Carolina, the place of MESC's incorporation, its principal place of business, and the place where MESC allegedly suffered a loss due to Defendants' alleged misrepresentations that induced Plaintiff to enter into the APA to acquire property in Charleston, South Carolina. *See Lister v. NationsBank of Delaware*, 329 S.C. 133, 494 S.E.2d 449, 455 (Ct.App.1998) ("[T]he place of the wrong is not where the misrepresentations were made but where Plaintiff, as a result of the misrepresentation, suffered a loss."). Therefore, the Court finds that South Carolina law applies to Plaintiff's claims for fraud and negligent misrepresentation.[9]

In order to prove fraud, Plaintiff has the burden of proving, by clear and convincing evidence, each of the following elements: (1) the defendant made a representation; (2) the representation was false; (3) the representation was material; (4) the defendant knew the representation was false or recklessly disregarded its potential falsity; (5) the defendant intended that Plaintiff act upon the representation; (6) Plaintiff understood the representation to be true; (7) Plaintiff relied on the truth of the representation; (8) Plaintiff had a right to rely on the truthfulness of the representation; (9) Plaintiff suffered a

consequent and proximate injury as a result. *See First State Sav. & Loan v. Phelps*, 299 S.C. 441, 385 S.E.2d 821, 824 (S.C.1989).

A party seeking to prove negligent misrepresentation must establish: "the defendant made a false representation to Plaintiff; (2) the defendant had a pecuniary interest in making the representation; (3) the defendant owed a duty of care to see that he communicated truthful information to Plaintiff;[10] (4) the defendant breached that duty by failing to exercise due care; (5) Plaintiff justifiably relied on the representation; and (6) Plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation." *Sauner v. Public Serv. Auth. of S.C.*, 354 S.C. 397, 581 S.E.2d 161, 166 (S.C.2003).

With respect to both fraud and negligent misrepresentation claims, a defendant's misrepresentation must relate to a present or preexisting fact. *See Phelps*, 385 S.E.2d at 825. A mere statement of opinion or expression of intention cannot form the basis for liability. *See Bishop Logging Co. v. John Deere Indus. Equip. Co.*, 317 S.C. 520, 527, 455 S.E.2d 183, 187–88 (Ct.App.1995). The absence of any element is enough to defeat the action at summary judgment. *See King v. Oxford*, 282 S.C. 307, 318 S.E.2d 125, 127 (Ct.App. 1984).

### III. PLAINTIFF'S NEW FRAUD ALLEGATIONS ARE DEFECTIVE AS A MATTER OF LAW.

There are eighteen New Fraud Allegations. There are no genuine issues of

9. The result of this order would not change if Delaware law was applied to this case as Plaintiff's claims would also fail based upon *res judicata,* judicial estoppel, and because Plaintiff could not otherwise show one of the necessary elements for the remaining causes of action.

10. Within the context of Plaintiff's negligence claim, the Court previously found that Defendants did not owe a duty of care with respect to the termination of the "MOU," defined herein. *See Hovis*, 325 B.R. at 167.

material fact. Each of these allegations are flawed as a matter of law and therefore Defendants are entitled to summary judgment. The Court will address each allegation individually.[11]

## A. Representation 1:

**"General Dynamics has elected to focus its resources on the management of its core defense businesses, and believes that MESC can be most successful in a corporation dedicated to the commercial sector."**

 This statement appears in the Prospectus at page GS 15.[12] Plaintiff contends this representation is false because Defendants never chose to focus their resources on management of MESC and that Defendants never determined whether the proposed Barge Mounted Power Plant ("BMPP") or the Liquefied Natural Gas ("LNG") businesses[13] were feasible. In essence, Plaintiff appears to argue that MESC could never be successful because the production of BMPPs and LNGs could not be profitable based upon the assets purchased.[14]

Plaintiff implies much into this statement; however, the statement is too vague to support a claim for fraud or negligent misrepresentation. The first clause, "General Dynamics has elected to focus its resources on the management of its core defense businesses" is simply too vague to rise to the level of a material fact. *See Rich Food Services, Inc. v. Rich Plan Corp.*, 98 Fed.Appx. 206 (4th Cir.2004) (unpublished) (finding representations that something is "unique" or "distinctive" to be too vague to be actionable as fraudulent). It is also not objectively possible to determine if General Dynamics "focused" its resources on its "core" defense business, therefore this statement is also merely a statement of opinion and is not actionable. *See Strasburger*, 420 S.E.2d at 874 ("Not every statement made in the course of commercial dealings is actionable at law. A mere statement of opinion, commendation of goods or services or expression of confidence that a bargain will be satisfactory does not give rise to liability in tort."); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 792 (4th Cir.1999)

11. For purpose of ease, the Court will refer to the content of the alleged misrepresentation as alleged by Plaintiff in his amended interrogatory responses. Where the content of the representation is not an exact quote of a written document, Plaintiff asserts that the location of the representation has been otherwise fully identified in his amended interrogatory answers. The Court has fully considered the content of each representation with reference to the document(s) identified by Plaintiff as containing and supporting each alleged misrepresentation.

12. The principal document provided to NCC, after executing the Confidentiality Agreement, is a document entitled as "Opportunity in LGN Containment Systems Fabrication." This document is the basis for the majority of the "New Fraud Allegations." Plaintiff refers to this document as a prospectus. Defendants refer to this document as marketing material. Solely for the purpose of ease and

without reaching a legal conclusion as to the legal nature of the document, the document will be referred to as the "Prospectus." From time to time in this Order, the Court will cite to pages of the Prospectus based upon the Bate Stamp number.

13. The LNG business involves the production of large containers, referred to as spheres, used for the transportation of liquefied natural gas. The BMPP business involves the production of self-sustaining power plants used off shore.

14. Plaintiff's *Exhibit A*, attached to his Opposition to Motion for Summary Judgment, sets forth in further detail Plaintiff's belief as to why each representation is false. This document will be referred to herein as *Exhibit A*, and was fully considered prior to reaching the conclusions in this Order as were Plaintiff's additional exhibits.

(finding under South Carolina law that expressions of opinion are not actionable as fraud; fraud may only be found in expressions of fact which "(1) admit of being adjudged true or false in a way that (2) admit of empirical verification").

Further, Plaintiff has not, by affidavit or otherwise, produced sufficient evidence to indicate that this statement is false. Plaintiff would have the Court imply that this statement indicates that General Dynamics focused its resources on MESC; however, this implication is not supported by this representation and therefore is not actionable.[15]

■ Similarly, the second clause, General Dynamics "believes that MESC can be most successful in a corporation dedicated to the commercial sector" is also not actionable because it is statement of opinion, not fact. The representation indicates a belief that MESC can be, in the future, "successful." Since this statement involves future events, it is not actionable. *See Private Mortg. Inv. Services, Inc. v. Hotel and Club Associates, Inc.,* 296 F.3d 308, 312 (4th Cir.2002) (finding, under South Carolina common law, that for false representation to be actionable, it must relate to a present or preexisting fact that is false when made). This statement does not indicate that MESC is now successful or profitable. *See Gilbert v. Mid–South Machinery Co., Inc.,* 267 S.C. 211, 227 S.E.2d 189 (S.C.1976) (finding a statement that a business is currently profitable to be actionable). Success in the future is subjective and a matter of opinion. It is not subject to empirical verification and therefore also constitutes an opinion, which is

also not actionable. *See Bavaria Intern. Aircraft Leasing GmbH v. Clayton, Dubilier & Rice, Inc.,* 2003 WL 21767739 (S.D.N.Y.2003) (finding a statement that a project would be successful was a matter of opinion and not actionable). Under South Carolina law, statements of opinion will not support claims for fraud or negligent misrepresentation. *See Winburn v. Ins. Co. of North America,* 287 S.C. 435, 439–40, 339 S.E.2d 142, 145 (S.C.Ct.App. 1985) ("To establish actionable fraud, there first must be a false representation [which] must be one of fact as distinguished from the mere expression of an opinion.").

**B. Representation 2:**

**"In addition, the primary assets General Dynamics sought to sell were . . . (ii) a business designed to produce aluminum spherical cargo tanks used for the transportation and storage of Liquefied National [sic] Gas (the 'LNG Business'); and (iii) a manufacturing operation dedicated to designing, manufacturing and constructing large amount of [sic] power plants (the 'BMPP Business')."**

Representation 2 consists of two statements, neither of which are actionable. The exact words of each statement are not contained in the Prospectus, cited by Plaintiff as the source of this representation. The first statement is contained on GS 13 and it reads: "MESC's primary assets would include the Charleston, South Carolina *facility* designed to produce aluminum spherical cargo tanks used for the storage and transportation of LNG . . . ." (emphasis added). The representation does not indicate that Defendants were

---

15. As with many of the New Fraud Allegations, Plaintiff would have the Court imply certain meaning into the representation beyond that contained in the representation made. Many of the implications made by Plaintiff are redundant. Though fraud may be implied, the Court does not find that the

meanings attributed by Plaintiff to the representations are warranted given the text of each representation within the context of the transaction. *See Oxford,* 318 S.E.2d at 127 (finding that fraud is not presumed but must be established by clear and convincing evidence).

selling a "business" designed to produce LNG spheres. The distinction between "business" and "facility" in this case is critical because, although MESC contends it was induced to buy a viable business, the APA indicates that MESC was merely purchasing assets, such as the facility in Charleston, South Carolina. Defendants cannot be held liable for a representation that they did not make. *See Sauner v. Public Serv. Auth. of S.C.*, 354 S.C. 397, 407, 581 S.E.2d 161, 166 (S.C.2003) (holding in order to establish liability for negligent misrepresentation, plaintiff must show "the defendant made a false representation to Plaintiff").

The claim also fails because the representation made was true in that the facility was designed to produce LNG spheres, as indicated by the declaration of Jordan [16] and the deposition testimony of Jordan, attached by Plaintiff to his brief opposing summary judgment. Plaintiff has not introduced any evidence to refute the assertion that the facility was designed to produce LNG spheres and therefore the action fails because the representation was not fraudulent.[17] *See id.*

The second statement in Representation 2 is not actionable because MESC cannot prove that the statement was ever made. The alleged statement reads: "In addition, the primary assets General Dynamics sought to sell were ... (iii) a manufacturing operation dedicated to designing, manufacturing and constructing large amount of [sic] power plants (the 'BMPP Business')." MESC contends in its interrogatory answers that the statement can be found in the Prospectus at pages GS 57–58. Plaintiff's counsel conceded at the hearing on the Motion that all representa-

tions were in writing and that he would "live and die" by his answers to the interrogatories; however, neither this representation, nor anything similar, is on the pages of the Prospectus cited by Plaintiff in his interrogatory answers. Thus, Plaintiff's action on this representation fails because there is no evidence that the representation was made and the implication of the representation is not supported by the Prospectus. *See Phelps*, 385 S.E.2d at 824 (holding that "a representation" is an element of a claim for fraud).

■ Each statement also fails because the Prospectus clearly indicates that Defendants were not selling a facility, which was still configured to produce LNG spheres or BMPPs. On GS 14, General Dynamics disclosed that in 1980 it "suspended its LNG ship building program.... The facility is currently configured to produce large steel waste treatment tanks and submarine sections ..." This statement should have put MESC on notice that the facility it was purchasing was not able to currently produce LNG spheres or BMPPs. MESC, through its own due diligence, could have also confirmed this fact. Plaintiff's fraud claim, based upon this statement, is barred because MESC received notice that the facility was not configured to manufacture LNG spheres and BMPPs. *See Robertson v. First Union Nat. Bank*, 350 S.C. 339, 565 S.E.2d 309, 314 (S.C.Ct.App.2002) (finding there can be no liability for matters which plaintiff could ascertain on his own in the exercise of due diligence). Plaintiff can also not show, as a matter of law, that MESC had the right to rely on any implication in the Prospectus that the facili-

---

16. Though Plaintiff moved to strike certain portions of Jordan's declaration dealing with his conversations with Gilliam, the portions of the declaration cited herein do not pertain to such conversations.

17. Plaintiff's deposition testimony, cited by Defendants, also indicates that Plaintiff acknowledges that the facility was designed to produce LNG spheres.

ty could immediately manufacture LNG spheres and BMPPs given the disclosure that the facility, at that time, was configured to manufacture other products. *See Oxford*, 318 S.E.2d at 128.

## C. Representation 3:

**"General Dynamics held 'proprietary manufacturing technology' with respect to the LNG Business."**

Representation 3 is a paraphrase of the Prospectus, which reads: "MESC's primary assets would include... proprietary manufacturing technology." Plaintiff contends that this representation is false because Defendants suspended their LNG operations in 1979, Defendants lost an exclusive license to sell the LNG spheres, Defendants had no "proprietary manufacturing technology" of value, and the facility could not construct an LNG sphere without reconfiguring the facility. Defendants argue that the statement is not actionable because Defendants owned LNG manufacturing technology custom designed for it by Vevey Engineering and that this technology was transferred to MESC.

The meaning that Plaintiff would have the Court imply is not supported by the text of the representation or the record of the case. *See Oxford*, 318 S.E.2d at 127 (finding that fraud is not presumed but must be established by clear and convincing evidence). The APA specifically lists all assets that Defendants agreed to transfer to MESC. According to Section 2.2 of the APA, MESC did not purchase any assets not specifically listed on the schedules attached to the APA. In an October 24, 1994 amendment to the APA ("Amendment"), MESC expressly agreed that the

schedules attached to the APA completely and accurately listed the assets purchased by MESC. The Court, in a prior order, found that Defendants had certain intellectual property rights and that all of these rights, that MESC bargained to receive, were transferred to MESC under the APA. *See Hovis*, 325 B.R. at 165. MESC also admitted, in its Second Amended Disclosure Statement, that it had certain LNG intellectual property rights and that it consented to a lender foreclosing on this intellectual property. Thus, the statement that Defendants had certain intellectual property rights has been adjudicated to be true and MESC, by its own acknowledgement in the *Amendment* and the *Second Amended Disclosure Statement*, received precisely all of the intellectual property that it contracted to receive under the APA.

Any expectation that additional intellectual property existed or would be transferred to MESC is not reasonable, as a matter of law, given the clear language in the APA and the Amendment that MESC was only entitled to receive those assets specifically listed on the schedules to the APA.[18] *See Oxford*, 318 S.E.2d at 128 (finding it is policy of courts not only to discourage fraud, but also to discourage negligence and inattention to one's own interests; party must avail himself of knowledge or means of knowledge *open to him*).

## D. Representation 4:

**"General Dynamics had a 'highly skilled workforce' thereby indicating that building of a LNG system was highly technical."**

▆▆▆ Representation 4 is another extrapolation of a statement contained in the

---

**18.** In the April 25, 2005 order granting summary judgment, the Court found "MESC alleges that General Dynamics did not turn over all intellectual property purchased under the APA. But the evidence is undisputed that General Dynamics delivered each and every one

of the items listed.... To get around this fact, MESC insists that it is entitled to intellectual property above and beyond that listed.... However, the Court finds this argument to be without merit...." *Hovis*, 325 B.R. at 165.

Prospectus. The actual wording reads: "MESC's primary assets would include ... a highly skilled workforce ...." Defendants contend that the representation was correct and that Plaintiff conceded the representation was accurate in his deposition.

 Representations relating to the "skill" of a party are generally considered to be puffery and not actionable as a fraudulent representation. *See Winburn,* 339 S.E.2d at 146 (finding a statement that someone was a "good" mechanic as not actionable under a theory of fraud); *American Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.,* 426 F.Supp.2d 1356, 1364 (N.D.Ga.2006) (applying Georgia law). There is also no objective basis for determining whether the workforce, as a whole, was "highly skilled" or whether the LNG system was "highly technical." These statements are therefore not actionable under South Carolina law because they indicate an opinion rather than a present or pre-existing fact. *See Harrison,* 176 F.3d at 792. Further, the representation that the LNG system is "highly technical" is not contained in the section cited by Plaintiff and therefore is not actionable because this representation does not appear to have been made by Defendants.

**E. Representation 5:**

"**Management projected rapid 'with sales of $35,000,000 in 1994, 135mm in 1995, 294mm in 1996 with a steady state revenue stream of 225mm per year.'**"[19]

The Prospectus reads: "Management *projects* rapid growth with sales of $35mm in 1994; $135mm in 1995, and $294mm in 1996 with a *potential* steady state revenue stream of *approximately* $225mm per year." (emphasis added.) This statement appears within the context of the global market for LNG spheres. Plaintiff contends that this representation is false because Defendants were in possession of a report from Bain & Company that indicated a significantly weaker market for LNG spheres[20] and that MESC could not produce the lowest cost LNG spheres internationally. Plaintiff also alleges that this representation is false because Defendants cancelled all bids and proposals provided to third parties before completing the sale to MESC and thus MESC could not meet these projections.[21]

This statement does not indicate, on its face or by implication, that MESC was the lowest cost producer of LNG spheres internationally or that MESC would in fact meet these projections with existing bids. Defendants cannot be held liable for state-

---

19. Language in Plaintiff's responses to interrogatories.

20. It appears from the record that the Bain & Company report was a report prepared for General Dynamics in 1993. The report appears to indicate a weaker market for LNG spheres than the market projected by Defendants. It also appears to indicate that General Dynamics would have a difficult time competing in the Asian market. Plaintiff relies heavily upon this report to support his position that the Prospectus was fraudulent in that he contends that the report demonstrates that General Dynamics over-estimated the market for LNG spheres by 300% and over-estimated MESC's ability to compete in the

global market. For reasons stated herein, the Court finds that the projections made by Defendants are not actionable, notwithstanding the Bain & Company report, because each are merely predictions of future events. It also appears that MESC was aware of the Bain & Company report before it executed the APA based upon a letter from MESC to the Governor's office, which referenced the report.

21. As discussed further in Representation 9, the Court has previously found no evidence to conclude that Defendants cancelled proposals purchased by MESC under the APA and that Defendants transferred all scheduled proposals under the APA. *See Hovis,* 325 B.R. at 165.

ments it did not make. *Phelps,* 385 S.E.2d at 824.

■ Representation 5 only speaks to a prediction of future sales and the market for LNG spheres. Under South Carolina law, "a false prediction or promise of future events generally cannot be a basis for fraud because it is not a representation, there is no right to rely on it, and it is not false when made... misrepresentation of future profits, a type of opinion and prediction of future events, generally cannot constitute fraud." *See Miller v. Premier Corp.,* 608 F.2d 973, 981 (4th Cir.1979). The projections contained in the Bain & Company report and in the Prospectus are each merely statements of future events and not of a pre-existing fact. General Dynamics, a former producer of LNG spheres, was free to disagree with the market projections made by another party and to make its own projections as to the future market for LNG spheres.[22] The predictions made by Defendants are also not actionable under South Carolina law as they are statements of opinion.[23] *Private Mortg. Inv. Services,* 296 F.3d at 312; *Koontz v. Thomas,* 333 S.C. 702, 713, 511 S.E.2d 407, 413 (S.C.Ct.App.1999) (holding trial court properly granted motion for summary judgment on negligent misrepresentation claim where plaintiff's alleged representations "related to future events, not existing facts"); *Emerson v. Powell,* 283 S.C. 293, 296, 321 S.E.2d 629, 631 (S.C.Ct.App.1984) ("As a general rule... the fraudulent mis-

representation must relate to a present or preexisting fact and it cannot ordinarily be based on unfulfilled promises or statements as to future events.").

■ The deposition testimony of Jordan, attached by Plaintiff as support for his position, indicates that Defendants did a great amount of research in making its projections for the LNG market.[24] Thus, there is no creditable evidence by Plaintiff to indicate that Defendants knew the representation was false at the time it was made and therefore it is not actionable as fraudulent. *See Phelps,* 385 S.E.2d at 824 (finding party must know representation was fraudulent or recklessly make representation in order to be liable for fraud).

**F. *Representation 6:***

**"It was estimated that ... programs would require the addition of up to 86 ships to the total fleet during the period 1994 to 2000. The current generation of Moss Rosenberg ships typically required 4 spheres ... resulting in potential demand for 250 spheres."**

The Prospectus actually reads as follows:

It is estimated that new natural gas projects and ship replacement programs will require the addition of *up to* 86 ships to the total fleet during the period 1994–2000. The current generation of Moss Rosenberg ships typically require

**22.** As indicated by Jordan's declaration, Defendants predictions appeared to be proven accurate by the actual market for LNG spheres during the 1990s.

**23.** It also appears from Debtor's Second Amended Disclosure Statement that Debtor devoted the majority of its resources to a project developing and constructing BMPPs in Port Qasim, Pakistan rather than creating

and selling LNG spheres. Debtor also appeared to abandon the LNG business in its confirmed plan by consenting to the foreclosure of the facility in Charleston, South Carolina and of the LNG intellectual property.

**24.** Jordan's deposition indicates that he visited every major *shipbuilder as well as* considered projections and publications by other entities in the LNG industry.

four spheres each, resulting in *potential* demand for more than 250 spheres. (emphasis added)

Plaintiff again contends that this statement is false because the Bain & Company report projected a weaker market and indicated that MESC could not produce LNG spheres at the lowest cost internationally. Plaintiff also contends that the statement is false because Defendants cancelled all proposals and bids provided to third parties before completing the sale to MESC and thus MESC could not meet these projections.

As with Representation 5, some of the information that Plaintiff implies in the representation are not supported by the representation and therefore it is not appropriate to hold Defendant liable beyond the actual representation. *See Oxford,* 318 S.E.2d at 127 (finding fraud is not presumed). The implications made by Plaintiff are also not supported by the law of this case. Any inference that this representation is false, because Defendants cancelled existing bids with MESC, is not actionable because the Court previously found that there is no evidence to support this allegation. *See Hovis,* 325 B.R. at 165 (finding that MESC received all the proposals it was promised and there was no evidence to indicate that Defendants cancelled proposals).

Representation 6 is merely a statement of the projected market for LNG spheres as indicated by the words "projects," "potential," and "up to." This statement is not a guaranty that MESC will certainly sell that many spheres based upon the assets it purchased and therefore is not actionable as it is a statement of opinion. *See Premier Corp.,* 608 F.2d at 981 (finding statements of future projections not actionable under South Carolina law).

█ Plaintiff has also not demonstrated that these projections were false at the time that they were made. Plaintiff relies heavily upon different projections contained in the Bain & Company report. However, both that report and the Prospectus contain merely projections of future events and neither can be determined as true at the time they were made. Defendants have produced the declaration of Jordan, which indicates that Defendants projections were in fact true based upon the actual ships built during the applicable time frame that required LNG spheres. Plaintiff has not produced any creditable evidence to conclude that Defendants' projections were false when made and therefore summary judgment is appropriate.

Plaintiff has also not produced sufficient evidence to indicate that Defendants knew that the representation was false, if it was false, at the time they made the representation. The deposition testimony of Jordan, attached by Plaintiff as support for his position, indicates that Defendants did a great amount of research in making its projections for the LNG market. Thus, there is no creditable evidence by Plaintiff to indicate that Defendants knew the representation was false at the time it was made and therefore it is not actionable as fraudulent. *See Phelps,* 385 S.E.2d at 824 (finding party must know representation was fraudulent or recklessly make representation in order to be liable for fraud).

### G. Representation 7:

**"Management believes that MESC's low cost position enables the Business to achieve strong operating margins."**

Representation 7 is found at GS 14 in the Prospectus and was made within the context of the manufacturing of LNG spheres. Plaintiff again contends that this

statement is false because the Bain & Company report projected a weaker market, that MESC could not produce LNG spheres at the lowest cost internationally,[25] and that Defendants cancelled all proposals and bids provided to third parties before completing the sale to MESC.

■ As with Representations 5 and 6, some of the information that Plaintiff implies in this representation is not contained in this representation and not supported by the previous findings of this Court. It is not appropriate to hold Plaintiff liable beyond the actual representation. Representation 7 indicates that Defendants believed that MESC had a low cost position, not the lowest cost position internationally, and thereby enables MESC to achieve "strong operating margins." These terms are subjective and not subject to empirical verification. Representation 7 is merely a statement of opinion and not actionable. *See Premier Corp.*, 608 F.2d at 981 (finding statements of future projections not actionable under South Carolina law).

■ Plaintiff has also failed to demonstrate that the statement was false. Plaintiff relies upon the Bain & Company report for the position that another manufacturer was the lowest cost producer of spheres internationally but does not offer any credible evidence that MESC's position was a high cost position compared with the industry as a whole, therefore summary judgment is appropriate because Plaintiff has failed to come forward with sufficient evidence to raise a genuine issue of material fact that the statement was false or is actionable as a statement of a pre-existing fact.

25. The Bain & Company report actually indicates that MESC could be price competitive

## H. Representation 8:

**"The buyer of MESC could expect to sell up to 250 spheres. (See GS 13 wherein the seller represented that the 'current generation of Moss Rosenberg ships typically requires 4 spheres each, resulting in potential demand for more than 250 spheres.' ")**

The Prospectus does not state that "[t]he buyer of MESC could expect to sell up to 250 spheres" but actually states: "[t]he current generation of Moss Rosenberg ships typically require four spheres each, resulting in potential demand for more than 250 spheres." Defendants cannot be liable for a statement that it did not make. This representation is also not a guaranty that MESC will sell 250 spheres. The representation actually made was fully addressed with Representations 5 and 6 and is not actionable as a statement of opinion or that Defendants otherwise knew that their projections of the future LNG market were false when this representation was made. *See Premier Corp.*, 608 F.2d at 981 (finding statements of future projections not actionable under South Carolina law).

## I. Representation 9:

**"MESC had various active proposals at hand with potential customers."**

The Prospectus pages cited by Plaintiff do not contain this exact statement but rather a heading that states "MESC Active Proposals" and provides a summary of four projects under review by Defendants. In subsequent pages, Defendants describe the status of each of the four projects. For two of the projects, Defen-

in the LNG business in the European market.

dants indicate that they have submitted proposals. The other two projects are described as a "near-term opportunity" and as "an opportunity to submit a proposal." Plaintiff contends that Representation 9 is false because Defendants cancelled all active bids and proposals prior to the sale to MESC and thus there were not bids or contracts for MESC to pursue after closing. Plaintiff also contends that this representation is false because any projections for MESC's contracts were fraudulently high based upon the Bain & Company report.

As previously stated, Defendants are not liable for failing to disclose projections in the Bain & Company report. Defendants are also not liable for statements not contained in the language of the representation. Under the active proposal portion of the document, there is only an indication that Defendants made proposals on two of the four projects. The Prospectus does not promise that Defendants would make further proposals, that the proposals made would exist for MESC to purchase in the APA, that Defendants would not cancel such proposals, or that MESC would obtain the business sought by the proposals. The declaration of Jordan indicates that the representations regarding the four projects were true when they were made to MESC and Plaintiff has not presented creditable evidence to sustain a contrary position. MESC also only purchased select proposals in the APA. The Court previously found that there is no evidence to indicate that Defendants canceled the proposals purchased by MESC under the APA. *See Hovis,* 325 B.R. at 166. Further, in the Amendment, MESC specifically acknowledged that it only contracted to receive those proposals listed in the schedules to the APA. Plaintiff has not come forward with sufficient evidence to demonstrate that this representation was false at the time it was made or that it did not receive the proposals it contracted to receive in the APA and therefore summary judgment is appropriate.

## J. Representation 10:

### "The Bushy Park facility was prepared to manufacture LNG systems."

This representation is not contained in the Prospectus. Plaintiff's basis for this representation appears on page GS 13, which states "MESC's primary assets would include the Charleston, South Carolina facility designed to produce aluminum spherical tanks for the storage and transportation of LNG." The Prospectus clearly disclaims the implication that the facility was currently prepared to manufacture LNG spheres on GS 14 where it is stated that the facility is "currently configured to produce large steel waste treatment tanks and submarine sections in support of the Electric Boat Division." The Prospectus further indicates that the facility has been used for non-LNG-related uses since General Dynamics suspended its LNG shipbuilding program in 1980. Plaintiff therefore cannot base a claim for fraud or negligent misrepresentation on this representation because it was not made and MESC could not reasonably rely on any implication that the facility could produce LNG spheres based upon the unambiguous disclosures contained in the Prospectus indicating that the facility was not currently configured to produce LNG spheres. *See Oxford,* 318 S.E.2d at 128 (finding it is policy of courts not only to discourage fraud, but also to discourage negligence and inattention to one's own interests; party must avail himself of knowledge or means of knowledge open to him).

**K. Representation 11:**

"The Charleston facility can produce 20–24 spheres and associated components per year. Charleston is the only facility in the World with the capacity to produce and transport completed; turn key Moss Rosenberg cargo containment systems for the current generation of LNG ships."

The two sentences that comprise Representation 11 are in the Prospectus, but they are not together. The first sentence is from GS 13, which reads: "The Charleston facility can produce 20–24 spheres and associated components per year. . . ." Two paragraphs later, on the next page, GS 14, the Prospectus states: "Charleston is the only facility in the world with the capability[26] to produce and transport completed, turn key Moss Rosenberg cargo containment systems for the current generation of LNG ships." Plaintiff asserts this representation is false because Defendants lost an exclusive license to sell "Moss Rosenberg" spheres and therefore had no technology of significant value to transfer to MESC,[27] that Bain & Company predicted weaker market for LNG spheres, that MESC was not the lowest cost producer, that Defendants cancelled all proposals and bids prior to the sale to MESC, and that MESC could not build an LNG system.

The primary meaning Plaintiff would have the Court imply into the representation is not contained or supported by the text of the representation and therefore is not actionable. Certainly, there is no warranty in the representation that Defendants have an exclusive license to sell Moss Rosenberg spheres or that MESC

would receive intellectual property beyond that which it bargained to receive in the APA, as previously determined by the Court in the April 25, 2005 summary judgment order. *See Hovis*, 325 B.R. at 165. The majority of the other implications have been fully addressed herein and are not actionable because they were either not made in this representation or MESC could not reasonably rely on any implication that the facility it purchased was able, at the time of purchase, to produce LNG spheres based upon the clear notice in the Prospectus disclosing that the facility was configured to manufacture other products.

█ Plaintiff has also failed to produce sufficient evidence, to raise a genuine issue of material fact, that the facility could not produce the number of spheres represented, if properly configured, or that the facility was not the only facility in the World with the capability of producing a turn key Moss Rosenberg cargo containment system. The deposition testimony of Jordan, attached by Plaintiff as support for his position, indicates that this representation is true if the facility were properly retrofitted to produce LNG spheres. *See Phelps*, 385 S.E.2d at 824. MESC was on notice that the facility was not so configured and Plaintiff has failed to produce sufficient evidence to indicate that this statement was false.

**L. Representation 12:**

"There is a strong market for the General Dynamics LNG systems."

This representation is not contained in the Prospectus. The Prospectus states:

---

26. MESC inaccurately used the word "capacity." The word in the Prospectus is "capability."

27. General Dynamics' loss of its exclusive license to sell Moss Rosenberg spheres was the subject of a published opinion. *See Moss Rosenberg Verft v. General Dynamics Corp.*, 467 F.Supp. 467 (D.Mass.1979).

"[d]emand for LNG has grown dramatically over the last few years and is expected to continue to grow at a high rate over the next 10 to 20 years." The Prospectus further predicts the demand for LNG spheres and the potential revenue that may be generated by the sale of LNG spheres.

■ Summary judgment is appropriate because MESC has failed to identify an actionable representation by Defendants. Plaintiff paints this representation as a pre-existing fact but appears to base this representation on projections contained within the Prospectus that have previously been fully addressed herein.[28] Plaintiff may not base a claim for fraud or negligent representation based upon these projections because they were merely opinions and not statements of pre-existing facts. Any representation actually made by Defendants that there is a "strong market" is also a statement of opinion and too vague to be actionable. *See Premier Corp.*, 608 F.2d at 981 (finding statements of future projections not actionable under South Carolina law).

Further, Jordan's declaration indicates that Defendants' projections were true. Jordan's deposition testimony also indicates that the Defendant did significant research on the LNG market before making its projections. Plaintiff has not produced sufficient evidence to the contrary to indicate that the representation was false or that Defendants knew the representation was false at the time they made the representation. Therefore, the Court finds there is not a genuine issue of material fact and therefore summary judgment is appropriate.

## M. Representation 13:

**"To further induce Gilliam and MESC to purchase the BMPP Business, they were led to believe by General Dynamics that it had entered into a memorandum of understanding (the 'MOU') with Westinghouse to develop BMPPs."**

This representation is not contained in the Prospectus. The Prospectus does indicate that Electric Boat worked with a major power generation equipment supplier to develop proprietary technology for the engineering, fabrication, and assembly of platform mounted power plants. Plaintiff contends this representation is false because Defendants exited the BMPP business before determining whether it was feasible, convinced MESC that the BMPP business had a solid future and that there was a viable market for BMPPs, that Defendants could not build a BMPP from the work completed, that Defendants existed the BMPP business prior to the termination of the MOU, and that Defendants had never developed any proprietary technology in connection with the design, fabrication, and assembly of a BMPP.

The text of the representation actually made does not contain anything regarding the feasibility, future, or the quality of the proprietary information regarding BMPPs and therefore is not actionable based upon these and other implications made by Plaintiff. Assuming Representation 13 was made, Plaintiff has not demonstrated that it is false. The Court previously found that Defendants entered into a MOU with Westinghouse for the purpose of working together regarding BMPPs and thus the representation has been adjudicated to be true. *Hovis*, 325 B.R. at 167.

28. The heavily relied upon Bain & Company report indicates that the LNG market "is in the upswing phase."

█ With regard to whether the MOU induced MESC to enter into the APA, there is no guaranty in the Prospectus that the relationship with Westinghouse would continue or that MESC would acquire the rights to this MOU in the APA. The MOU itself was a loose relationship between General Dynamics and Westinghouse and could have been terminated by either party, at any time without notice. The APA itself specifically designates which rights MESC would receive and the rights under the MOU was not one of assets purchased by MESC. MESC acknowledged in the Amendment that the schedules to the APA were complete and accurate and thus it is not reasonable for MESC to presume that it did or should have acquired the rights under the MOU. The MOU was also scheduled to expire in September of 1994. The MOU was also not assignable without the written consent of Westinghouse.

Westinghouse terminated the MOU on April 22, 1994 and the Court previously found that Gilliam was notified of this termination "within a matter of days." *Hovis,* 325 B.R. at 161. Based upon the foregoing, summary judgment is also appropriate because MESC could not reasonably rely on the existence of the MOU when it entered into the APA because it was advised that the MOU had terminated, it did not acquire the MOU in the APA, the MOU, by design, would have terminated before the closing of the APA, and there is no credible evidence to indicate that the statements contained in the MOU were false or otherwise designed to induce MESC to enter into the APA.

## N. Representation 14:

"**On April 22, 1994 Westinghouse forwarded correspondence to General Dynamics purportedly terminating the MOU (the 'Termination Letter') pursuant to paragraph 4.4. In the Termination Letter, Westinghouse requested a 'royalty free' license for project information and technology conceived and developed solely by General Dynamics, and for all project data that had not been previously transmitted to Westinghouse including certain 'CATIA' solid models.**"

Representation 14 is not a representation made by Defendants. Plaintiff's answers to Defendants' interrogatories acknowledge as much as it states that Westinghouse made the representation in the Termination Letter.[29] To the extent that Plaintiff is relying on the Termination Letter as a representation, Defendants are not liable for representations that they did not make and therefore this representation, if false, is not actionable against Defendants as a fraudulent misrepresentation.

Plaintiff seems to imply that Defendants terminated its relationship with Westinghouse in 1993, prior to determining whether the BMPP business was feasible, and that they acted in concert with Westinghouse to make it appear that Westinghouse terminated the relationship through the Termination Letter. Thus, the representation of the Termination Letter would be false in that Defendants, not Westinghouse, terminated the MOU in 1993. The Court has previously confronted and re-

---

**29.** Westinghouse has previously been dismissed from this action. An action for con-

spiracy against Defendants has also been dismissed.

jected this implication and found "MESC lacks evidence to support its assertion. The facts are that Westinghouse terminated the MOU unilaterally pursuant to an April 22, 1994 letter-a letter that was shared with MESC almost immediately and which was listed in the exhibits to the APA." *Hovis*, 325 B.R. at 166.

As to the representations actually made in the Termination Letter, there is no indication that these representations are false in that the Termination Letter did not contain the statements attributed to Westinghouse or that the statements otherwise caused MESC injury. In Plaintiff's *Exhibit A*, Plaintiff implies much into this representation, such as the allegations that Defendants exited the BMPP business before the Termination Letter, that Defendants had not determined the feasibility of BMPPs, that they did not develop proprietary technology, and that Defendants never built a turn key BMPP. These inferences are not supported by the plain text of this representation, the Termination Letter, the Prospectus, or any other document submitted by Plaintiff and therefore are not actionable. With regard to the BMPP technology, the Court previously found that MESC received all property that it contracted to receive. *Hovis*, 325 B.R. at 165. The Court therefore finds that summary judgment is appropriate. There is not a genuine issue of material fact concerning the representations actually made by Defendants. There is no indication that Defendants made the representations at issue or that these representations are false. There is also no indication that MESC had a right to rely on such representations given that it was put on notice of the termination of the MOU by being provided a copy of the Termination Letter from Westinghouse.

## O. Representation 15:

**"After Gilliam complained to General Dynamics about the 'termination' by Westinghouse of the MOU, General Dynamics and Westinghouse presented him with a letter dated August 24, 1994 to allay his concerns."**

Representation 15 refers to a letter agreement between Westinghouse and General Dynamics. Plaintiff asserts that this letter is a fraudulent representation because it was presented to MESC to assert that certain intellectual property rights exists, that a MOU would be transferred to MESC, and that certain projects are viable. Plaintiff also asserts that this letter indicates that General Dynamics was transferring certain technology, owned "solely" by Defendants, to MESC and that Plaintiff later discovered that such technology was jointly owned with Westinghouse. Finally, Plaintiff alleges that this letter continues to perpetuate the alleged fraud by Defendants by indicating that the BMPP business was feasible and had a solid future.

■ The letter at issue neither contains nor implies the representations that Plaintiff relies upon as false and fraudulent. Rather it indicates that the MOU in fact terminated and that Westinghouse and MESC *may* enter into a new MOU if they so agree. If MESC and Westinghouse entered into a new MOU, the letter stated that MESC *may* work with Westinghouse on certain projects. Each of these statements concern future events and not a pre-existing fact and therefore are not actionable under South Carolina law. These statements do not indicate that Defendants have pre-determined the BMPP business to be feasible or that it had a solid future.

The letter also indicates that General Dynamics will transfer "its rights" to BMPP technology. This statement does

not indicate that General Dynamics held exclusive right to such technology or that such technology was feasible or had a viable future. The letter itself clearly indicates that some of the technology was jointly owned with Westinghouse. The Court previously found that Defendants are not liable for breach of contract because Defendants turned over all intellectual property rights MESC was entitled to receive under the APA even though some of those rights were jointly owned with Westinghouse, as Defendants did not represent that they had exclusive rights to such intellectual property. *Hovis*, 325 B.R. at 165. Based upon the foregoing, Plaintiff has failed to present evidence that the actual representations made in the August 24 letter were false or that MESC could rely on the letter beyond the actual representations contained in the letter. The letter clearly put MESC on notice that some of the technology was jointly owned by the MOU and therefore it is not reasonable for MESC to rely upon any implication in the letter that Defendants had sole title to all intellectual property.

## P. Representation 16:

Pursuant to the APA, the Debtor acquired from General Dynamics the BMPP and LNG Business, which included representations that MESC was receiving:

b. *Any and all bids, proposals and estimates of General Dynamics prepared or delivered in connection with contracts for the Business or related components in connection with the Business listed on Schedule 2.1(b) of the Disclosure Schedules (collectively the "Proposals").*

d. *Any and all computer software, computer programs, computer data bases and related documentation and materials, data documentation, trade secrets, confidential business information (including ideas, formulas, compositions, inventions, know—how manufacturing processes and techniques, research and development information, drawings, designs, plans, proposals and technical data, financial, marketing and business data, pricing and cost information)* <u>and other Intellectual Property rights owned by the Seller as of the closing date and listed on Schedule 2.1(d).</u>

e. Any and all licenses, approvals, permits, registrations, certificates and other similar rights held by the seller in connection with the Business as of the closing date.

f. Any Contract entered into in connection with BMPP Business.[30]

Representation 16 purports to be a quote from Section 2.1 of the APA. The first sentence, however, is a paraphrase. The APA actually reads:

2.1 Purchase and Sale of Purchased Assets. On the terms and subject to the conditions set forth in this Agreement, at the Closing the Purchaser will purchase from the Seller, and the Seller will sell, transfer, assign, convey and deliver to the Purchaser, all of the Seller's right, title and interest in and to all of the assets of the Business, other than the Excluded Assets (collectively, the "*Purchased Assets* "), including the following assets:

Plaintiff again makes multiple implications into these statements such as the viability, feasibility, and value of the assets

---

30. The use of italics and underlining in Representation 16 is in MESC's Interrogatory Answers.

purchased; however, the implications made are not supported by the text of the statement or by implication and therefore are not actionable. Furthermore, this Court has already granted summary judgment on Plaintiff's claim that Defendants committed a breach of contract by allegedly not delivering the assets it promised to deliver under Section 2.1 of the APA.[31] *See Hovis,* 325 B.R. at 165. MESC agreed under Section 2.2 of the APA that it was only purchasing scheduled assets and later affirmed in the Amendment that the schedules were complete and accurate.

■ Plaintiff now seeks to make an end run around that ruling by repackaging its breach of contract claim as a claim for misrepresentation. This tactic fails as a matter of law. The law of tort should not be transposed with that of contract. Business parties may allocate risk in a contract, which is reflected in the purchase price. *See Greenwood Mills, Inc. v. Russell Corp.,* 981 F.2d 148, 151 (4th Cir.1992) (applying South Carolina law). The law of contract protects a party's decision not to be bound. *See id.* at 152. In this case, Defendants agreed to sell MESC certain assets at a certain price. If MESC desired additional assets or warranties on the assets purchased, it should have obtained those in the APA. As a matter of law, the Court found that MESC was not entitled to receive additional intellectual property not listed in the schedules. Plaintiff cannot now claim fraud, based upon any untrue representation in the APA, because the Court has determined that Defendants did not breach the contract and any such breach may not be the basis for a claim for

fraud. *See Duc v. Orkin Exterminating Co., Inc.,* 729 F.Supp. 1533 (D.S.C.1990) (finding that the mere violation of a contract does not support a claim for fraud).

## Q. Representation 17:

**"The Intellectual Property was valued by General Dynamics to be worth $6,470,000.00."**

■ According to Plaintiff, Representation 17 is "contained in the document directed to MESC ... dated July 11, 1994 and set forth at Exhibit 27 to Plaintiff's Motion for Summary Judgment." The document in question consists of a one page internal General Dynamics memorandum with a fax cover sheet. The document was prepared by M.A. Rector, the Director of Taxes at Electric Boat. It discusses the possible allocation for tax purposes of the $12 million price to be paid by NCC for the assets sold under the APA and proposes to allocate $6,470,000.00 of the purchase price to "LNG/BMPP Technologies." Plaintiff contends that this representation is false because there was no valuable technology developed by Defendants.

Representation 17 cannot support a misrepresentation claim because there is no evidence that Defendants ever represented to MESC that the intellectual property was worth $6,470,000.00. The document on which MESC relies was an internal General Dynamics memorandum. Plaintiff has produced no evidence that this precise representation, indicating the value of the intellectual property, was ever communicated by Defendants to MESC[32] and

---

**31.** The Court also barred Plaintiff's contract claims on grounds of judicial estoppel and *res judicata.*

**32.** The representation of value contained in Exhibit 27, if communicated to MESC, also would have occurred after MESC entered into

the APA therefore MESC could not have relied on the representation when entering into the APA, which constitutes additional grounds to grant Defendants summary judgment on this representation.

therefore summary judgment is appropriate because this representation was not made to MESC.

### R. Representation 18:

**"MESC had sole title to BMPP Intellectual Property it developed and conceived under the MOU."**

MESC asserts that Representation 18 was made: "In the letter dated April 24, 1994 pursuant to which Westinghouse allegedly cancelled the MOU; in the letter dated August 24, 1994; and in oral conversations with William Gilliam and Craig Cogut an investor in MESC as set forth in Gilliam's Declaration at paragraph 38." Plaintiff's interrogatory answers also indicate that the representation is contained in the MOU and that Gilliam was repeatedly assured by Nickerson that Defendants had sole title of the BMPP intellectual property being sold.

There is no such representation to MESC in any of the documents, identified by Plaintiff as containing this alleged misrepresentation, that Defendants had "sole title" to the intellectual property and therefore Plaintiff's action fails because it is not supported by the documents.[33] The documents indicate that Defendants did not have sole right to the intellectual property. The MOU itself explains that General Dynamics and Westinghouse would have sole ownership of intellectual property that each conceived and developed independently, and they would have joint ownership rights of intellectual property they conceived and developed jointly. The August 24 letter also discloses, with respect to jointly developed technology, that both Defendants and Westinghouse have rights and a non-exclusive license in such technol-

ogy. A representation simply does not exist in the documents produced by Plaintiff to support its claim and therefore it is not actionable. MESC also could not reasonably rely on any inference that Defendants had sole title to all intellectual property given the clear notice provided to it that the subject property was jointly owned.

Further, in granting summary judgment on Plaintiff's breach of contract claim, this Court has previously determined that General Dynamics did not represent to MESC that it had sole title to all of the BMPP intellectual property, as Plaintiff raised this issue as a breach of the APA. *See Hovis*, 325 B.R. at 165. The fact that some of the intellectual property was jointly owned with Westinghouse was not a breach of contract and should therefore not be actionable now as a fraudulent representation because there is no credible evidence to indicate that Defendants represented to MESC that Defendants had the exclusive rights to the intellectual property transferred to MESC.

### IV. DEFENDANTS' REMAINING DEFENSES ARE NOT BARRED BY THE LAW OF THE CASE DOCTRINE

 Plaintiff contends that Defendants' remaining arguments of judicial estoppel and *res judicata* and Defendants' arguments relating to the non-reliance are barred by the law of the case doctrine because the Court previously did not grant Defendants summary judgment as to certain tort allegations based upon these arguments.

The Court's April 25, 2005 order denying summary judgment is interlocutory. *See Hensley v. Horne*, 297 F.3d 344, 347

---

**33.** The April 24 letter is again not actionable because there is no evidence that it was a representation made by Defendants.

(4th Cir.2002). The order did not make a specific ruling on the viability of Defendants' defenses of *res judicata*, judicial estoppel, and the non-reliance provisions, other than to find that such defenses did not merit granting Defendants summary judgment on the allegations before the Court at that time. *See Hovis*, 325 B.R. at 167 ("The Court has doubts as to whether MESC can prevail on its fraud claim. Nonetheless, it concludes that there are genuine issues of fact that preclude the entry of summary judgment on this count."). Further, the allegations before the Court, at that time, did not include the "New Fraud Allegations" presently before the Court.

■■■■■■ The power to reconsider interlocutory orders is committed to the discretion of the trial court. *See American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir.2003). *See also*, Fed.R.Civ.P. 54(b). The court has plenary power to afford such relief as justice requires. *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1473 (4th Cir.1991). Although the law of the case does not limit the court's power to reconsider an earlier ruling, it does guide

the court's discretion. *See American Canoe Ass'n*, 326 F.3d at 514–15; *Crain v. Butler*, 419 F.Supp.2d 785, 788 n. 1 (E.D.N.C.2005) (citing Rule 54 and finding "just because a predecessor United States District Judge entered the order does not preclude this court from revisiting it."). Therefore, the Court finds that Defendants' remaining defenses are not barred by the law of the case doctrine.

## V. PLAINTIFF'S NEW FRAUD ALLEGATIONS ARE BARRED BY NON–RELIANCE PROVISIONS

■■■■■■ Under South Carolina law, the right to rely on a representation is an element of both an action for fraud and an action for negligent misrepresentation. *See Phelps*, 385 S.E.2d at 824 (setting forth the elements for fraud); *Sauner*, 581 S.E.2d at 166 (setting forth the elements for negligent misrepresentation). Defendants alleged that MESC may not rely on the representations that comprise the "New Fraud Allegations" based upon terms contained in the APA and a Confidentiality Agreement [34] between General Dynamics and MESC.[35]

The Confidentiality Agreement provides:

**34.** The Confidentiality Agreement is dated March 23, 1994 and was executed by Gilliam for NCC. MESC acquired the rights of NCC. Execution of the Confidentiality Agreement was a prerequisite to NCC receiving any information about the assets Defendants proposed to sell. The principal document provided to NCC, after executing the Confidentiality Agreement, was the Prospectus.

**35.** Pursuant to the terms of these documents, New York law governs the construction and enforceability of the Confidentiality Agreement and Delaware law governs the construction and enforceability of the APA. Courts in each of these jurisdictions enforce the plain meaning of an unambiguous contract. *See Aspen Advisors LLC v. United Artists Theatre Co.*, 843 A.2d 697 (Del.Ch.2004) (finding when the words of a contract are plain and

unambiguous, binding effect should be given to their evident meaning); *Norma Reynolds Realty, Inc. v. Edelman*, 29 A.D.3d 969, 817 N.Y.S.2d 85 (2006) (granting summary judgment and finding that when a written agreement that is complete, clear, and unambiguous on its face must be enforced according to plain meaning of its terms). Contractual non-reliance provisions are also valid and enforceable in both jurisdictions. *See MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 218 (3rd Cir.2005) (finding under Delaware law that when sophisticated parties have inserted clear anti-reliance language in their negotiated agreement, and when that language, though broad, unambiguously covers the fraud that actually occurs, that language will be enforced to bar a subsequent fraud claim); *CFJ Associates of New York Inc. v. Hanson Industries*, 274 A.D.2d 892, 711 N.Y.S.2d 232

We acknowledge that neither you, nor Goldman Sachs or its affiliates, nor your other Representatives, nor any of your or their respective officers, directors, employees, agents or controlling persons within the meaning of Rule 12b–2 under the Securities Exchange Act of 1934, as amended, makes any express or implied representation or warranty as to the accuracy or completeness of the Information,[36] and we agree that no such person will have any liability relating to the Information or for any errors therein or omissions therefrom. We further agree that we are not entitled to rely on the accuracy or completeness of the Information and that we will be entitled to rely solely on such representations and warranties as may be included in any definitive agreement with respect to the Transaction, subject to such limitations and restrictions as may be contained therein.

The APA also states: "EXCEPT FOR THE SPECIFIC REPRESENTATIONS, WARRANTIES AND COVENANTS SET FORTH IN THIS AGREEMENT... ALL OTHER REPRESENTATIONS AND WARRANTIES... ARE HEREBY EXPRESSLY DISCLAIMED." The APA's integration clause also states that the APA "supersedes any prior... representations by or among the parties, written or oral, that may have related in any way to the subject matter hereof." Both the APA and the Confidentiality Agreement were executed by Gilliam, a person, who by Plaintiff's admission at oral argument, was a sophisticated business person in the energy field and whom did tens of millions of dollars of business in this field prior to the APA. *Hovis,* 325 B.R. at 167. ("It is undisputed that this was an ordinary commercial transaction between sophisticated parties. A large, well-known law firm represented MESC. MESC's chairman, Gilliam, was a highly experienced investment banker. Investment bankers, a major accounting firm and in-house counsel also assisted MESC.").

In response to this issue, Plaintiff cites to a July 1, 1994 letter from Saul Gliserman, former in-house counsel of MESC, to counsel for General Dynamics. The letter indicates that MESC in fact relied upon certain representations contained in the Prospectus and other statements made to MESC's agents in entering into the APA. The letter does not indicate that such reliance was reasonable, given that MESC already entered into the APA and was bound by the provisions of the Confidentiality Agreement.

■ Under South Carolina law, "[t]here is no liability where information is furnished with a clear understanding that the defendant assumes no liability for its accuracy." *See AMA Management Corp. v. Strasburger,* 309 S.C. 213, 420 S.E.2d 868, 874 (S.C.Ct.App.1992). *See also, Bank of Montreal v. Signet Bank,* 193 F.3d 818, 830 (4th Cir.1999) (holding lead bank's disclaimers in participation agreement made reliance of participating bank unreasonable as a matter of law under a theory of constructive fraud). A party, however, cannot escape liability based

(2000) (finding a specific written disclaimer will vitiate an allegation that one party reasonably relied on alleged misrepresentations of the other party in executing a contract, and thus will bar recovery for fraud). South Carolina law determines whether MESC had a right to reasonably rely on the representations made to it. *See Witt,* 860 F.Supp. at 300–01.

**36.** "Information" is a broadly defined term in the Confidentiality Agreement. The term encompasses both oral and written representations made regarding the acquisition of the stocks or assets of MESC.

upon a general, boilerplate merger clause that does not specifically indicate that reliance is not reasonable. *See Slack v. James,* 364 S.C. 609, 614 S.E.2d 636, 641 (S.C.2005) (finding a clause must be specific to preclude the actions of fraud and negligent misrepresentation).[37] *Redwend Ltd. Partnership v. Edwards,* 354 S.C. 459, 581 S.E.2d 496 (S.C.Ct.App.2003) (finding a general merger clause does not preclude an action for fraud).[38]

In the documents, agreed to by MESC, Defendants stated that they were not warranting the accuracy of any information, oral or written, it provided to MESC and its agents, other than those contained in a definitive agreement. *See Hovis,* 325 B.R. at 166 (finding MESC lacked a right to rely on any implied covenants in the APA). The non-reliance provision in the Confidentiality Agreement is not a standard, boilerplate clause pasted into the agreement with other standard language but appears to be specifically tailored to provide an unambiguous indication to those that did business with Defendants that Defendants only agreed to be bound to a limited extent. It is a more specific and stronger non-reliance provision than the provisions at issue in *Redwend* and *Slack.* In the APA, the definitive agreement entered into by MESC, Defendants reiterated the non-reliance provision contained in the Confidentiality Agreement in that they expressly disclaimed all warranties and representations not in writing and indicated that the APA superseded prior agreements. The combination of the Confidentiality Agreement and the APA, clearly indicate that MESC lacked the right to rely on any representation not contained in the APA. MESC, a party with a sophisticated principal experienced in this area of business, on two occasions, expressly agreed to waive any cause of action that MESC might have based upon any inaccurate information provided and further agreed that MESC would not rely on any representation not specifically agreed to by the parties in a final agreement. *See Redwend,* 581 S.E.2d at 502 (citing *Rissman v. Rissman,* 213 F.3d 381, 383 (7th Cir.2000) as an example of a proper non-reliance clause).[39] The logic of *Rissman* is persuasive in that a party should not be able to consummate a transaction at a particular price and disclaim reliance only to subsequently assert that they were relying. *Rissman,* 213 F.3d at 383 (holding under securities law that a party should not be able to in effect say " 'I lied when I told you I wasn't relying on your prior

---

**37.** The clause at issue in *Slack* provided:
"21. ENTIRE AGREEMENT. This written instrument expresses the entire agreement, and all promises, covenants, and warranties between the Buyer and Seller. It can only be changed by a subsequent written instrument (Addendum) signed by both parties. Both Buyer and Seller hereby acknowledge that they have not received or relied upon any statements or representations by either Broker or their agents which are not expressly stipulated herein."
*Slack,* 614 S.E.2d at 637.

**38.** The clause at issue in *Redwend* provided:
"9. Entire Agreement. This Agreement contains the entire agreement and understanding by and between Edwards and the Partnership with respect to the subject matter hereof. All prior agreements and negotiations are merged herein, and if not set forth herein are duly waived. Each party agrees that representations, promises, agreements or understandings, written or oral, not contained herein shall be of no force or effect ...."
*See Redwend,* 581 S.E.2d at 501.

**39.** The language in *Rissman* provided "The parties further declare that they have not relied upon any representation of any party hereby released... or of their attorneys..., agents, or other representatives concerning the nature or extent of their respective injuries or damages." *See Rissman,* 213 F.3d at 383.

statements' and then to seek damages for their contents").

The Court is not aware of any evidence in the record that indicates General Dynamics would have initially conducted business with MESC if MESC had not signed and agreed to the Confidentiality Agreement and the APA. This aged, tortured bankruptcy case may have been avoided if MESC simply indicated, from beginning and certainly prior to entering into the APA, that it did not agree with the terms of the Confidentiality Agreement and thereby removed itself as a contender for Defendants' assets. Instead, Plaintiff claims reliance and seeks recovery on behalf of MESC for alleged broken promises when MESC itself would be in breach of a clear representation it made to General Dynamics. The fact that MESC told General Dynamics, after it received the information and after it entered into the APA, that it was in fact relying on certain representations not contained in the APA does not raise a genuine issue of material fact. Glisserman's letter only indicates that MESC may have relied. Neither the letter nor other evidence in the record raises a genuine issue of material fact that such reliance by MESC was reasonable.

Based upon the specific, unambiguous language of the Confidentiality Agreement and the APA, MESC could not reasonably rely on any representation not made to it in the APA. MESC also clearly waived any right of action that it might have against Defendants based upon representations not contained in the APA. Therefore, the Court finds that summary judgment is appropriate on all of the New Fraud Allegations because there was a specific agreement by MESC not to rely and not to hold Defendants liable for any representations

not contained in the APA. *See AMA Management Corp.*, 420 S.E.2d at 874; *Emptage & Associates, Inc. v. Cape Hampton, LLC*, 19 A.D.3d 536, 799 N.Y.S.2d 525 (2005) (affirming summary judgment and dismissal of fraud claim based upon a merger clause).

## CONCLUSION

For the foregoing reasons, this Court grants summary judgment in favor of Defendants and against MESC on each of the New Fraud Allegations.[40]

---

**40.** Based upon this Order granting Defendants' Motion, the Court does not need to determine, at this time, Defendants' defenses of judicial estoppel, *res judicata*, and proximate cause would entitle Defendants to summary judgment.